COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Shirley G. STEELE, Respondent.

No. 87–643.

Supreme Court of Iowa.

Oct. 21, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Shirley G. Steele, Missouri City, Tex., pro se.

NEUMAN, Justice.

This disciplinary proceeding concerns a complaint filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) against attorney Shirley G. Steele. The complaint charged that Steele misused and mishandled client funds in violation of sections EC 1–4, EC 1–5, DR 1–102(A)(1), (3), (4), (5) and (6), EC 9–6 and DR 9–102(A) and (B) of the *Iowa Code of Professional Responsibility for Lawyers.* A division of the Grievance Commission dismissed the complaint, concluding that the committee failed to meet its burden of proving the charges by a convincing preponderance of the evidence. In accordance with Iowa Supreme Court Rule 118.11, we granted the committee permission to appeal.

As in all lawyer disciplinary cases, we have reviewed de novo the record made before the Grievance Commission. Iowa Sup.Ct.R. 118.10. While we give respectful consideration to the commission's findings and recommendations, we are not bound by them. *Committee on Professional Ethics & Conduct v. Davidson*, 398 N.W.2d 856, 856 (Iowa 1987). In the case before us, we are unable to reconcile dismissal by the Grievance Commission with persuasive record evidence of ethical violations, including Steele's own admission of misconduct. Because her misconduct relates to the serious matter of a lawyer's duty to protect and preserve the property of a client, and our strict prohibition against commingling of funds, we suspend Steele's license to practice law for not less than three years.

This controversy arises out of Steele's representation of Isaiah Crawford in connection with a workers' compensation claim filed in June 1980 against John Deere Harvester Works. In October 1981, the Illinois Industrial Commission awarded Crawford $1,866.70. Crawford sought judicial review of the award, but by this time Steele had ceased practicing in Iowa and moved to Texas. She declined to represent Crawford further in the workers' compensation case, but agreed to continue representing Crawford in an unrelated appeal to the United States Supreme Court which we shall refer to as the *McLaughlin* case. Meanwhile, Deere satisfied the workers' compensation award plus interest by issuing a check dated November 10, 1981, in the amount of $1,984.53, made jointly payable to Steele and her client.

Beyond these bare facts, Steele's subsequent handling of Crawford's award is hotly contested. Based on the testimony of

Isaiah Crawford, the committee contends that Steele endorsed Crawford's signature on the check without his authority and for the intervening six years has failed to account for the proceeds or return that portion to which Crawford is entitled. For her part, Steele contends that Crawford signed a power of attorney and contingent fee agreement authorizing her to negotiate the check on his behalf and withdraw therefrom her one-third contingency fee; that Crawford has consistently refused to accept the balance of the proceeds; and that she currently maintains funds earmarked for Crawford in a trust account awaiting this court's direction to her regarding payment.

On balance, we find Crawford's version of this six-year scenario far more persuasive for the reasons detailed below.

I. It is beyond dispute that Steele cashed the compensation award on December 15, 1981, endorsing the check in her own name and as attorney in fact for Isaiah Crawford, and that to date no part of the award has been remitted to Crawford.

At the hearing before the Grievance Commission, Crawford steadfastly maintained that at no time had he authorized Steele to endorse the compensation award on his behalf for he feared that cashing the check would jeopardize the judicial review he wished to pursue. Steele, aware of Crawford's concern but unable to convince him otherwise, justified her action based on Crawford's alleged execution of a power of attorney and contingent fee agreement which authorized her endorsement of the check and withdrawal of a $630 fee plus expenses in the *McLaughlin* case.

The record refutes Steele's alleged authority in two significant respects. First, in the face of Crawford's denial that he ever executed a power of attorney or contingent fee agreement, Steele was unable to produce either document. Second,

Crawford's insistence that the workers' compensation check not be cashed for litigation expenses is corroborated by a letter dated December 12, 1981, in which he forwarded a money order for $300 representing the amount Steele told him would be required for the *McLaughlin* appeal.[1]

Moreover, Crawford testified that in the same December conversation in which he advised Steele he would be sending the money order, she led him to believe that she had returned the compensation award to Deere. This accounts for the fact that in 1985, when Crawford learned that his petition for judicial review of the compensation award had been dismissed, he contacted Deere, not Shirley Steele, to collect the sums he was due. Correspondence between Crawford and Deere confirm these contacts.

Steele denies having so misrepresented her actions, insisting that all along Crawford should have known she cashed the check in December 1981 and, but for expenses, was holding the balance in trust for him. This assurance, however, is called into question by another piece of evidence produced by the committee. Crawford received a copy of an undated letter, admittedly written by Steele sometime after June 1, 1982, purporting to respond to an inquiry by attorney Charles Levy concerning reimbursement for expenses he incurred in his earlier representation of Isaiah Crawford in connection with the workers' compensation case. Steele's response states that she was "in receipt of the check as awarded by the arbitration commission" but suggests that Levy could not be reimbursed for expenses until after the appeal was resolved. In reality, of course, the check had already been negotiated by Steele at least six months earlier.

We find it significant that Steele failed to produce any documentary evidence which would corroborate her version of her al-

---

1. Steele admittedly lost the $300 money order which Crawford had mailed to her to cover these expenses. As purchaser of the money order, however, the burden rested upon Crawford to claim reimbursement for the loss. Crawford eventually redeemed the money order but advanced no more funds to Steele. She uses this to reinforce her argument that Crawford must have known she cashed the check and used some of the proceeds to pursue the *McLaughlin* appeal, an argument we find unpersuasive in light of other inconsistencies in her testimony.

leged agreement with Crawford. In each instance where production of such independent evidence could support Steele's version of the events, some factor ostensibly outside her control purportedly prevented her from doing so. Thus she was unable to supply a copy of the alleged power of attorney, or fee statements or any correspondence confirming notice to Crawford concerning cashing of the check or disposition of the proceeds. Explaining this lack of documentary evidence, Steele testified that upon her move to Texas she stored all of her Iowa case files in a garage and they were subsequently destroyed by hurricane Alicia. This unusual explanation was evidently accepted by the Grievance Commission. But it does not explain why five years after the compensation award was made, she still has remitted none of the proceeds to her client. To justify her inaction, she relies on Crawford's reluctance to accept the proceeds for fear of jeopardizing his appeal. But Steele did not offer a shred of evidence to suggest that she attempted to monitor the status of the judicial review proceedings or make periodic efforts to contact Crawford concerning the remaining funds.

If, as Steele contends, the balance of funds is intact, we are unable to understand why she did not remit them to Crawford upon learning of his complaint to the Iowa State Bar Association. At that time, if not previously, Steele should have known that the workers' compensation proceeding had been concluded and there was no reason for her to continue to hold the funds. Steele's lack of candor on this issue is underscored by the excuse she advanced in oral argument wherein she claimed for the first time that she was awaiting judicial direction regarding disposition of Crawford's funds. We find this eleventh-hour attempt to shift the blame for her inaction entirely unprofessional and unacceptable.

In summary, we find that the committee proved by a convincing preponderance of the evidence that Steele negotiated her client's check without his authorization, thereby committing professional misconduct. *Committee on Professional Ethics & Conduct v. Kinion*, 206 N.W.2d 726, 728

(Iowa 1973). She also misled Crawford regarding its status, thereby breaching the following ethical considerations and disciplinary rules: EC 1–5 (a lawyer should maintain high standards of professional conduct); DR 1–102(A)(4), (5), and (6) (a lawyer shall not engage in conduct involving dishonesty or misrepresentation, conduct that is prejudicial to the administration of justice, or conduct that adversely reflects on fitness to practice law); and DR 9–102(B) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into possession of the lawyer and render appropriate accounts to the client regarding them.)

II. Tracing the proceeds of the Deere check after Steele cashed it entails no factual dispute. Since she was unable to produce bank statements or other records accounting for the funds between 1981 and the Grievance Commission hearing in January 1987, we are obliged to rely on Steele's testimony. She candidly admitted having no trust account in which to initially deposit the funds in 1981, having closed her Iowa trust account and being without a license to practice law in Texas. She claims, however, that she eventually opened a special bank account in Texas in which she deposited the balance of the Deere check after withdrawing her one-third contingency fee of approximately $630 and, later, $300 for expenses advanced in the *McLaughlin* case.

In 1982, after her admission to the Texas bar, Steele joined another lawyer in an association called Crumwell, Steele and Crumwell where she reportedly kept the balance of roughly $1000 earmarked for Crawford in an account with other clients' funds. In late 1984, while Steele was associated with a different group of lawyers known as Kennedy, Steele and Kennedy, Crawford's funds were inadvertently spent when Steele issued a check for $1300 to a personal injury client on the strength of a settlement check deposited in the trust account that was later dishonored due to insufficient funds. When questioned about replacing the Crawford funds after this incident, Steele testified as follows:

I did not immediately replace that money. That is precisely what I am guilty of. I got sick. I entered into the hospital and I moved again. I moved again. The Kennedy, Steele and Kennedy association didn't last very long. And in January of that year I think I went into the hospital. So the funds from the Kennedy, Steele thing went into my personal checking account where I maintained over $1000 balance. I knew that I had to get this money separated and I did not do that until December of '86 because there was things that happened. That is where if I mismisappropriated or misused, abused the funds it is at that point.... I knew I had to do this, you know. I had to do it, but I just didn't get around to doing it.

The only conclusion to be drawn from Steele's own testimony is that she not only failed to establish a trust account for Crawford's funds, she commingled his funds with her own for nearly two years. Such conduct is specifically prohibited by DR 9–102(A) which requires that all funds of clients paid to a lawyer shall be deposited in an identifiable trust account. Moreover, we have repeatedly held that the proscription against commingling client funds with funds belonging to an attorney is absolute. *Davidson*, 398 N.W.2d at 859; *Committee on Professional Ethics & Conduct v. Thompson*, 328 N.W.2d 520, 523 (Iowa 1983). As we said in *Davidson*, the reason for the rule is clear: commingling not only makes clients' funds available for personal use by the attorney but subjects those funds to the claims of the attorneys' creditors. *Davidson*, 398 N.W.2d at 859.

We conclude that Steele not only violated the trust account and record keeping requirements of DR 9–102(A) and (B), her conduct jeopardized the confidence of her client in the legal system. Such professional impropriety constitutes a violation of EC 9–6.

III. Prior disciplinary cases involving misuse of client funds have resulted in sanctions ranging from reprimand to license revocation. *See Committee on Professional Ethics & Conduct v. Krpan*, 316 N.W.2d 682, 682–83 (Iowa 1982) (lawyer reprimanded for misrepresenting status of lawsuit filed beyond limitation period and satisfying fees out of bail funds without accounting and contrary to agreement with client); *Committee on Professional Ethics & Conduct v. Getscher*, 356 N.W.2d 557, 559 (Iowa 1984) (lawyer's license suspended for sixty days when, without notice to client, he borrowed money to pay estate expenses, including his own fee, using estate funds to pay the interest); *Committee on Professional Ethics & Conduct v. Brodsky*, 318 N.W.2d 180, 183 (Iowa 1982) (lawyer drew a three-year suspension for mistakenly investing $2000 estate funds in his personal brokerage account, thereby personally profiting $2110); *Committee on Professional Ethics & Conduct v. O'Connor*, 329 N.W.2d 1, 4 (Iowa 1983) (license revoked for failure to account for client's funds, failure to separate client and personal funds, and failure to return clients' funds upon request). In each case we have tailored the sanction to fit the particular circumstances, considering not only the respondent's fitness to practice law, but also the need to deter others from similar conduct, thereby assuring the public that courts will maintain the ethics of the legal profession. *Getscher*, 356 N.W.2d at 558.

Despite the numerous professional improprieties evident in the record before us, the portrait that emerges is one of a lawyer who is more disorganized and irresponsible than deceitful. Though Steele offered feeble excuses for failing to furnish evidence of an accounting and not remitting Crawford's funds to him at an earlier date, she was quite candid about the more clear-cut charge of commingling. She has cooperated with the committee in its investigation, responding to requests for admissions and appearing before the Grievance Commission and this court.

Nevertheless the record establishes that Steele mishandled funds with which she was entrusted and misled her client into believing they were still intact. Her total failure to maintain or furnish accountings of any sort stands without satisfactory explanation. By her conduct Steele has called into serious question her fitness to

carry out the lawyer's duty to preserve and protect the funds of a client.

We therefore suspend Shirley G. Steele's license to practice law in the courts of this state indefinitely, with no possibility of reinstatement for three years. During the period of suspension she shall refrain from the practice of law as that term is defined in Iowa Supreme Court Rule 118.12. Before we shall consider her reinstatement, Steele must prove that within thirty days from the filing of this opinion, she reimbursed Isaiah Crawford for the $1,054.53 to which he is entitled. She must further document that her trust accounting procedures adhere to the requirements of DR 9–102(A) and (B) and that she has otherwise complied with those restrictions which our rules place on suspended attorneys. It is further ordered that the costs of this action shall be assessed against the respondent in accordance with Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.

All Justices concur except LAVORATO and SNELL, JJ., who take no part.