505 N.W.2d 494 (1993)
The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT Of the IOWA STATE BAR ASSOCIATION, Complainant,
v.
Yale H. IVERSON, Respondent.
No. 93-651.
Supreme Court of Iowa.
September 22, 1993.
*495 Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.
Yale H. Iverson, pro se.
Considered en banc.
SNELL, Justice.
This lawyer disciplinary case was brought against respondent, Yale Iverson, for abandoning his representation of clients without notice to them. The Grievance Commission of the Supreme Court of Iowa found violations of our disciplinary rules of professional conduct and ethical conduct standards and recommended a license suspension of six months. Our review of this matter is de novo. Committee on Professional Ethics & Conduct v. Steele, 414 N.W.2d 108, 109 (Iowa 1987).
Yale Iverson's license to practice law in Iowa was under suspension when the present charges were brought. The charges were filed by the Committee on Professional Ethics and Conduct in 1992 but largely pertained to conduct that occurred in 1987. Three acts formed the basis for the charges.
Barbara Feldman employed Yale Iverson to seek redress for a claimed wrongful discharge from her employment at a hospital. She paid Iverson $2000 as an initial payment for attorney fees and expenses. She signed an attorney compensation agreement that stated the advanced money "was not to be repaid to the client in any event." In addition to consulting with the client, Iverson's entire legal representation consisted of writing one letter to the hospital asking for a response to his client's claim. No out-of-pocket expenses are shown. No response from the hospital or additional contacts appear to have been made. Feldman made numerous unsuccessful attempts to contact Iverson to learn the status of her case. Her telephone calls to Iverson were not answered and were never returned. After four months passed, she learned by contacting Iverson's wife that Iverson had closed his office in Des Moines and moved to Maryland. He had transferred her case to a lawyer in Des Moines whom she did not know and did not employ. The transfer was without notice to Feldman and was unauthorized.
Iverson similarly failed to notify another client of his discontinued law practice. Walter Kalen had employed Iverson to represent him on matters of dispute arising out of his divorce. A question arose about whether he had a common-law marriage and whether he owed back child support. His wife claimed $30,000 in back child support arising from a 1980 divorce decree. Walter Kalen disputed the claim because he had provided child support for years after the divorce during the time he again lived with his wife. When a support order issued, Kalen employed Iverson to prepare a motion to quash. Kalen spent three hours with Iverson giving him information for the motion and paid Iverson $1000. Iverson assured Kalen that the motion would be filed the next morning.
One week later Kalen checked at the Polk County Clerk's Office and learned that nothing had been filed. He found Iverson's law office closed and learned, after inquiry, that Iverson was gone for the summer, and all of his records were in storage. Kalen was unaware of Iverson's acts.
Kalen then hired another attorney at additional expense, who resolved his legal problems in four or five weeks. Before this happened, money was withheld from five of Kalen's paychecks and his income tax refund was attached.
The third ground for disciplinary sanction is based on Iverson's failure to respond to disciplinary authorities' notices. Multiple attempts were made by the committee to serve *496 notices by certified mail on Iverson. The commission found that it mattered not if Iverson purposely evaded service because he unquestionably received two notices on January 25, 1992. Those notices notified him of possible ethical violations and requested a responsive statement. Iverson never responded to these notices or to the committee in any fashion.
Yale Iverson appeared at the commission hearing to represent himself. He did not testify regarding the charges against him, electing to show his defense by cross-examination of witnesses and legal argument. He denies any fault regarding his representation of Barbara Feldman, believing the $2000 fee she paid was "used up." Iverson notes that Feldman ultimately gave up her claim after consulting with the successor lawyer and suffered no prejudice from Iverson's actions. In any event, Iverson argues that Feldman agreed in writing that the $2000 fee would not be returned "in any event." The commission rejected these defenses and so do we. The $2000 fee was reimbursed to Barbara Feldman by the Client Security Trust Fund, which is funded by Iowa lawyers in order to reimburse clients who have suffered financial losses due to their own lawyer's transgressions. Iverson claims he was unaware of the proposed payment until after it was made, disputes its need, and has not repaid the commission.
Iverson's cross-examination of Barbara Feldman reveals his approach to the task of representing her was based on his idea that the case would be settled and it would take only a few letters to do it. He thought this followed from the fact that other hospital employee discharge cases settled. The evidence indicates Iverson wrote only one letter to the hospital. Any other legal work by Iverson, if performed at all, was miniscule. He made no accounting of his work to Feldman and offered none. Certainly, the fee advanced was not "used up." Nor does the written language of the compensation agreement formthat the fee would not be returned "in any event"bar a claim by Barbara Feldman. That language must obviously be conditioned on the performance of a reasonable amount of work by the lawyer. It is not a trick phrase allowing a lawyer to take a client's money, do little, quit, and then claim a satisfaction of the bargain. Iverson's suggestion that this language freed him from further obligation to Feldman bares a woeful misunderstanding of the professional obligation owed by a lawyer to the client. Iverson's argument that Feldman had no case anyway and therefore suffered no prejudice is an equally fatuous idea. Whether a case result ultimately benefits a client does not provide an excuse for a lawyer's failure to practice law on his client's behalf.
We find as did the commission that Iverson's conduct in representing Barbara Feldman violated several professional standards. Canon 4, EC 4-2 was violated by referring Barbara Feldman's case and transferring her papers to another lawyer without her knowledge and consent. Iowa Code of Professional Responsibility, Canon 4, EC 4-2 (1989). By withdrawing without notice to the client, he violated EC 2-34 and DR 2-110(A)(2). Id. EC 2-34, DR 2-110(A)(2). By failing to refund the fee, he violated DR 2-110(A)(3). Id. DR 2-110(A)(3).
Iverson apologized for his conduct in representing Walter Kalen. At the same time, he felt he owed Kalen nothing back from the $1000 advanced, claiming that sum paid for other legal problems in the divorce. No accounting was made indicating the amount of time spent on other matters versus the amount of time spent preparing and filing the motion to quash the order to withhold Kalen's wages. Kalen testified he liked Iverson as a person but felt he "got nothing" for his money. We agree. Kalen's primary concern was stopping the withholding of his wages. All of the preliminary work of preparing a motion to quash was rendered worthless to Kalen when Iverson failed to file it with the clerk of court. Iverson argues again that there was no prejudice because the withheld wages were offset later in the divorce proceeding by other sums that Kalen received in the division of assets. We reject this notion, as we have with regard to Barbara Feldman's case, as empty reasoning.
Iverson tries to excuse the closing of his office without notice to Kalen and Feldman by asserting that it was common knowledge *497 for about a year that he was interested in buying a ship and changing careers. He said that, when that happened and he moved to Maryland, no one should have been surprised. However, both Feldman and Kalen testified they knew nothing of these plans. Walter Kalen said he knew of Iverson's considerable interest in boats but not of a plan to close his law office.
With respect to the representation of Walter Kalen, we find Iverson withdrew from employment without taking steps to avoid prejudice to his client. We find Iverson failed to give notice of the discontinuance of his law practice to Kalen, failed to refund Kalen's prepaid fees, and failed to return Kalen's papers to him. Based on these findings, we hold Iverson violated canon 2, EC 2-34 and DR 2-110(A)(2) and (3). Id. Canon 2, EC 2-34, DR 2-110(A)(2), (3). Moreover, Iverson neglected matters entrusted to him, violating DR 6-101(A)(3), and failed to carry out his contract of employment, violating DR 7-101(A)(2). Id. DR 6-101(A)(3), DR 7-101(A)(2).
Iverson's further response in explaining his acts of neglect and his not responding to the committee's letters is that he was "at sea." In essence, he claims he was virtually incommunicado for four years. He also suggests that "people do from time to time not accept certified mail." He professes cooperation with the Committee on Professional Ethics and Conduct "at every point where I had an opportunity." Iverson told the committee he decided in 1986 he did not want to practice law anymore, closed his office and was not now trying to get his license back. He says he appeared trying to defend his name.
We think Iverson's entire demeanor from 1987 to the conclusion of the commission hearing demonstrates indifference to professional responsibility. His failure to testify before the committee in favor of trying to create through cross-examination some reasonable doubt to explain his actions confuses a lawyer's duty to a client with the question of guilt of a defendant. Iverson sought to cloud the truth rather than to enlighten the commission. He either secreted his whereabouts from the committee or refused to acknowledge its attempts to contact him. The supposed cooperation he claims was only at his convenience and amounted to nothing. We find his conduct violated EC 1-4 and DR 1-102(A)(5) and (6). See, e.g., Committee on Professional Ethics & Conduct v. Van Etten, 490 N.W.2d 545, 547-48 (Iowa 1992); Committee on Professional Ethics & Conduct v. Horn, 480 N.W.2d 861, 863 (Iowa 1992); Committee on Professional Ethics & Conduct v. Gill, 479 N.W.2d 303, 306-07 (Iowa 1991); Committee on Professional Ethics & Conduct v. Peterson, 471 N.W.2d 787, 788 (Iowa 1991).
We often hold that a failure to cooperate in an ethics investigation is an independent act of misconduct. See Committee on Professional Ethics & Conduct v. Pracht, 505 N.W.2d 196 (1993); Van Etten, 490 N.W.2d at 548.
Based upon the foregoing record, we conclude a suspension of Yale Iverson's license to practice law is warranted. We now suspend his license indefinitely with no possibility of reinstatement for one year from the date of this opinion. Any application for reinstatement should be accompanied by proof that Iverson has reimbursed the Client Security Fund for sums it paid to Barbara Feldman and that he has reimbursed Walter Kalen for the $1000 retainer Iverson received from him. See Iowa Sup.Ct.R. 118.12. Costs are assessed to respondent pursuant to Iowa Supreme Court Rule 118.22.
LICENSE SUSPENDED.
All justices concur except LAVORATO and TERNUS, JJ., who take no part.