COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

John E. BEHNKE, Appellant.

No. 92–192.

Supreme Court of Iowa.

June 17, 1992.

Kasey W. Kincaid, Faegre & Benson, Des Moines, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

PER CURIAM.

Attorney John E. Behnke appeals from the report of the Grievance Commission (Commission) recommending that his license to practice law be suspended for a period of at least thirty-six months. The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (Committee) commenced this proceeding against Behnke because of his conduct in the representation of a client in a slip-and-fall case and of his carelessness in the maintenance of his trust account. The Commission found that Behnke violated various provisions of the Iowa Code of Professional Responsibility for Lawyers,

specifically EC 1–5 (requiring high standards of professional conduct), DR 1–102(A)(6) (engaging in conduct reflecting adversely on fitness to practice law), DR 9–102(A) (failure to safeguard client funds in trust account), DR 9–102(B)(3)–(4) (failure to maintain complete records of client funds, render appropriate accountings, and promptly pay clients funds which clients are entitled to receive), and DR 9–103(A) (failure to maintain adequate books and records on current basis). The Commission recommended that Behnke's license be suspended for a period of thirty-six months. We agree with the substance of the Commission's findings and concur in its recommended sanction.

Mr. Behnke has been publicly disciplined twice for unethical conduct. In 1979, his license was suspended for three years for drafting a will in which the client named him as beneficiary. *Committee on Professional Ethics and Conduct v. Behnke,* 276 N.W.2d 838 (Iowa), *appeal dismissed,* 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979). In 1986, he received a reprimand from the Committee for neglectful and "slip-shod" handling of a client's case.

In 1989, Behnke was retained by a client over the telephone to handle a claim against a school for damages the client incurred from a slip-and-fall accident. There was no oral or written fee arrangement or letter of representation between Behnke and the client.

Behnke made a demand against the liability insurer for the school. The insurer denied liability; however, Behnke secured the payment of $2,108.25 under a medical payments provision contained in the insurance policy. We agree with the Commission's findings that there was no consultation with the client regarding the handling of the claim and that the claim was settled without input from the client. Behnke asked to meet with the client for the first time at a cafe after he received the $2,108.25 check. Behnke secured the client's endorsement on the check and wrote the client a check for $100. We agree with the following finding of the Commission:

Respondent did not provide any documentation or accounting to [the client] as to the funds received and disbursed other than the $100.00 she received on November 25, 1989. She did not know how much in fees the Respondent had taken and she had never received an accounting of any expenses or payments made from the trust account.

Behnke told the client the balance of $2,108.25 collected from the insurer would go to pay her medical expenses. Behnke promptly paid himself $702.75 as an attorney fee, which represented one-third of the $2,108.25 collected from the insurer. He then wrote the Iowa Department of Human Services (Department) requesting information on the total payments made by the State on his client's behalf, and the formula to be used in computing the actual amount the State should be reimbursed. Behnke received two letters in response from a Department employee. The first letter referred to the statute setting forth the reimbursement formula. It also suggested that Behnke could deduct his fee and court costs from the total settlement amount. The second letter provided the exact amount, $760.91, that the State had spent on behalf of the client. After receiving these two letters, Behnke did nothing further except to erroneously pay himself a second fee of $235.56 based on the suggestion he could deduct his fee.

Subsequently, the client received a bill from one of her physicians regarding fees in connection with the slip-and-fall accident. In December 1989, the client discussed this matter with another lawyer. In January 1990, she wrote Behnke discharging him as her attorney and requesting her file, trust funds, and an accounting for the trust funds. Behnke did not answer this letter. In May, the client's new lawyer sent a second request. Behnke, who was in a hospital for knee surgery, responded promptly and provided the name of the insurance adjuster. The new lawyer wrote Behnke twice and finally received a phone call from Behnke on July 13, 1990. During this conversation, Behnke indicated that he had paid himself a one-third contingency

fee, paid the client $100, and paid the balance of $1,305.50 to health care providers and to the State as reimbursement for the client's medical expenses. However, at the time of the letter, the balance of $1,305.50 actually remained in the trust account. It was not until May 1991 that Behnke reimbursed the trust account for the erroneous second fee, reimbursed the State, and paid the outstanding physician's bill.

Behnke had another trust account problem. In August 1990, Behnke inadvertently overpaid another client funds which the client had already received. This error resulted in a negative balance in the trust account for this client and a reduction in the total amount of funds actually in the trust account. In early 1991, Behnke hired a bookkeeper who testified that Behnke had chronic problems accounting for clients' funds and that he often made record-keeping mistakes. Behnke kept his records on settlement sheets. Contrary to Behnke's answer on his annual Client Security and Attorney Disciplinary Commission (Client Security) questionnaire, Behnke did not reconcile his trust account checkbook balance monthly. In 1988, Behnke told a Client Security auditor that he did not know the meaning of the term "reconciliation."

■ On appeal, Behnke maintains that the sanction of a three-year suspension recommended by the Commission is not only unduly harsh but inconsistent with the underlying goals of the attorney disciplinary process. The scope of our review is de novo. Iowa Sup.Ct.R. 118.11. Although we are not bound by the Commission's findings or recommendations, we give them respectful consideration. *Committee on Professional Ethics and Conduct v. Boysen*, 480 N.W.2d 26, 27 (Iowa 1992). In our de novo review, we find that Behnke acted improperly in both respects and conclude that Behnke is in violation of the provisions of the Iowa Code of Professional Responsibility for Lawyers as indicated by the Commission.

Behnke does not dispute the Commission's finding of misconduct in handling his client's case and in the maintenance of his trust account. Rather, Behnke contends that his violations do not justify the severity of the sanction suggested by the Commission. He maintains that he neither misappropriated nor misused client funds and that the negative balance in his trust account resulted from an inadvertent payment. Behnke maintains that he corrected this negative balance by making a deposit into the trust account. He further asserts his belief that the accounting procedures used to maintain his trust account complied with Client Security's requirements for maintaining trust accounts, and that he has taken sufficient steps to remedy his deficiencies. Finally, Behnke offers the fact that he had suffered serious illness during this time as a consideration but not as an excuse.

■ We believe that Behnke's initial handling of his client's personal injury claim by telephone with only one subsequent meeting at a cafe is a serious breach of professional responsibility. Behnke settled the client's medical insurance claim without discussing the status of her tort case with the client. Fortunately, new counsel was able to pursue this action. Behnke's $100.00 payment to the client out of funds intended for payment to health care providers is consistent with the Commission's conclusion that Behnke operates "his practice as he saw fit rather than follow the rules." In its decision, the Commission indicated that Behnke had a "rules be darned attitude" and that "he does things his way." We believe that an attorney owes a duty to the client to disclose the terms of an intended fee and to keep a client informed about the progress of the case. Behnke utterly failed in this respect. Consequently, we agree with these conclusions.

The record also indicates that Behnke did not disclose information to the client concerning the disposition of the settlement. Not only did Behnke fail to provide his client with a proper accounting, he lied to her and her new attorney by stating that the client's medical providers had been paid. Behnke's delay of nearly eighteen months in making payments to the client's

medical providers represents an unacceptable disregard of the rights of others. Furthermore, either through bungling or greed, Behnke attempted to exact a second fee on the amount owed the State. We do not accept his excuse that he had forgotten he had already taken his full one-third fee earlier.

 Behnke's management of the money in his trust account and his failure to reconcile his trust account checkbook balances with bank statements are also violations of our ethical rules. Even though Behnke's overdraft on the trust account was unintentional, it is a serious violation. Careless accounting procedures and poor office management are not excuses or mitigating circumstances regarding commingled funds. *State ex. rel. Nebraska State Bar Ass'n v. Statmore*, 218 Neb. 138, 352 N.W.2d 875, 878 (1984). The fact that Behnke has taken steps to correct his poor accounting procedures does not obviate the need for a severe sanction.

We are concerned with Behnke's fitness to practice law, the need to deter others from similar misconduct and our assurance to the public that the courts will maintain the ethics of the profession. *Committee on Professional Ethics and Conduct v. Cody*, 412 N.W.2d 637, 641 (Iowa 1987). We also conclude that Behnke has not learned from his past disciplinary problems. In light of these concerns, we accept the recommendation of the Commission.

We order that John E. Behnke's license to practice law in this state is suspended indefinitely with no possibility of reinstatement for thirty-six months. Upon any application for reinstatement, Behnke shall bear the burden of proving that he has not practiced law during the period of suspension and that he has complied with the requirements of Iowa Supreme Court Rules 118.12 and 118.13 in all respects. Behnke shall also bear the burden of proving that he has taken steps to correct the deficiencies determined in this case. Costs are assessed to appellant. *See* Iowa Sup. Ct.R. 118.22.

LICENSE SUSPENDED.