IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

William H. GILLIAM, Respondent.

No. 96–1847.

Supreme Court of Iowa.

Feb. 19, 1997.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Thomas J. Levis of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and LAVORATO, JJ.

McGIVERIN, Chief Justice.

We must determine whether respondent William H. Gilliam's handling of his client trust account violated the Iowa Code of Professional Responsibility for Lawyers (Code), and, if so, whether the discipline recommended by our Grievance Commission (Commission) is appropriate. A division of the Commission found that Gilliam's conduct violated several disciplinary rules and recommended that he be publicly reprimanded. We agree with the Commission's findings but conclude that Gilliam's violations warrant a

thirty-day suspension of his license to practice law.

I. *Background facts and proceedings.* William Gilliam, an attorney licensed to practice law in Iowa, is engaged in a solo practice in Waterloo. He maintains a client trust account, which is divided into individual client subaccounts and an attorney fee subaccount, in a Waterloo bank. This disciplinary proceeding arose out of the following irregularities in connection with Gilliam's client trust account.

In the 1980s Gilliam represented a client, Karan Beebe, in a workers' compensation matter. Under the terms of the settlement agreement negotiated in that case, an insurance company was obligated to make a series of $4000 yearly payments to Beebe. Each year from 1987 through 1992 the insurance company sent the annual payment to Gilliam, who deposited the payment in the client trust account. Two-thirds of the payment, or $2666.67, was credited to Beebe's client subaccount, and a check in that amount was issued to Beebe. The remaining one-third of the payment was credited to Gilliam's attorney fee subaccount in accordance with a fee agreement between Gilliam and Beebe. However, when the final $4000 payment arrived in June 1993, the entire $4000 payment was credited to Gilliam's attorney fee subaccount. Beebe was not notified that Gilliam had received the insurance company's $4000 payment for 1993. The $4000 payment was later transferred to Gilliam's personal account.

According to Gilliam, he did not learn of the error in the processing of the 1993 payment until a 1995 audit by our Client Security Commission. Gilliam apparently failed to keep his file concerning Beebe's case and later had to obtain records concerning her from the Industrial Commissioner. After the audit, Gilliam deposited $4000 of his personal funds into the client trust account, sent Beebe a check for $2666.67, and treated the remainder as his attorney fee. Gilliam did not pay Beebe any interest or give her any explanation for the late payment.[1]

In his long-term representation of a trucking company, Warren Transport Company, Gilliam habitually advanced funds for expenses and then sent monthly bills to the company. After having an abstracting company do some work on Warren Transport's behalf and receiving a bill from the abstracting company for $1262, Gilliam included that amount on his monthly bill to Warren Transport and deposited Warren Transport's payment into his personal account.[2] The abstracting company reduced the amount on its bill to $662 after Gilliam pointed out a billing error, and Gilliam paid the bill with funds from his personal account. Gilliam credited Warren Transport's client subaccount with the difference rather than sending Warren Transport a refund.

Audits of Gilliam's client trust account by a Client Security Commission auditor in 1989, 1992, and 1995 revealed negative balances in several client subaccounts and in Gilliam's attorney fee subaccount.[3] After the 1989 and 1992 audits, the auditor warned Gilliam that such negative balances were impermissible. As a result of the 1989 audit, Gilliam instituted a computerized accounting system. When the 1992 audit showed continuing problems, Gilliam instructed his accountant to review the monthly bank statements for the client trust account and reconcile the statements with the information in Gilliam's computer files. After performing the reconciliations, the accountant e-mailed changes in the computer files to Gilliam's office but did not send Gilliam a written accounting. The 1995 Client Security Commission audit, however,

---

1. The cover letter sent with the check stated, in its entirety: "Dear Karan: Please find attached my draft # 1241. I trust you are doing well. Very truly yours, W.H. Gilliam."

2. Despite this method of handling Warren Transport's payment, Gilliam responded to an annual Client Security Commission questionnaire by asserting that he kept all client funds in a separate client trust account.

3. Following the 1989 audit, a secretary in Gilliam's office was terminated and prosecuted for embezzlement. In addition, Gilliam attributes his accounting problems to staff error and difficulties in accessing computer records. Nevertheless, he stated on annual Client Security Commission questionnaires that he performed monthly reconciliations of his client trust account.

still showed negative balances in some client trust accounts. Since the 1995 audit, Gilliam has continued his computerized accounting system but now also maintains a handwritten ledger for the client trust account.

Because of the irregularities found during the audits of Gilliam's client trust account, complainant Iowa Supreme Court Board of Professional Ethics and Conduct (Board) filed a complaint against Gilliam alleging violations of various provisions of the Iowa Code of Professional Responsibility for Lawyers. *See* Iowa Sup.Ct.R. 118.5. Gilliam answered the complaint, denying the material allegations. He appeared with counsel at a hearing before a division of the Commission. *See id.* 118.7. The Commission found that Gilliam had violated several Code provisions and recommended that Gilliam be publicly reprimanded. *See id.* 118.9. Gilliam did not appeal.

■ II. *Proof burden and standard of review.* The Board must establish by a convincing preponderance of the evidence that respondent Gilliam has committed the Code violations alleged. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma,* 533 N.W.2d 532, 535 (Iowa 1995).

■ When respondent does not appeal the Commission's recommendation, we review de novo the record made before the Commission, determine the matter, and impose any appropriate discipline, which can be a lesser or greater sanction than the discipline recommended by the Commission. Iowa Sup.Ct.R. 118.10.

III. *Violations of the Code.* The Commission concluded that Gilliam did not violate several of the Code provisions as alleged by the Board. It determined that the Board failed to prove Gilliam violated DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude) or DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The Commission noted that although Gilliam had failed to exercise good judgment with regard to accounting procedures and office management, his conduct did not amount to a violation of DR 1–102(A)(6) (lawyer shall not engage in conduct

adversely reflecting on the fitness to practice law).

However, the Commission found that Gilliam's conduct violated several other provisions of the Code. It found that because of the irregularities in connection with his client trust account, Gilliam violated DR 9–102(A) (lawyer shall maintain clients' funds from practice of law in trust account); DR 9–102(B)(1) (lawyer shall promptly notify client of receipt of client's funds); DR 9–102(B)(3) (lawyer shall maintain complete records of all clients' funds coming into lawyer's possession and shall render appropriate accountings); DR 9–102(B)(4) (lawyer shall promptly pay to the client the funds which the client is entitled to receive); and DR 9–103(A) (lawyer shall maintain current records adequate to show compliance with DR 9–102).

■ Our review of the record in this case leads us to conclude that a convincing preponderance of the evidence supports the Commission's findings and conclusions regarding Gilliam's violations of the Code. There is undisputed evidence that funds belonging to Karan Beebe were deposited into Gilliam's attorney fee subaccount rather than Beebe's client subaccount, and that Gilliam did not promptly notify Beebe of the receipt of such funds or send Beebe her share of the funds. The funds of another client, Warren Transport, were not properly deposited into the client trust account. The evidence also shows that at various times several subaccounts had negative balances and that Gilliam failed to adequately maintain records for his client trust account.

■ IV. *Discipline.* We consider both aggravating and mitigating circumstances in fixing the appropriate discipline for attorney misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mattson,* 558 N.W.2d 193, 195 (Iowa 1997); *Committee on Prof'l Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 680 (Iowa 1991). In this case, we take into account, as did the Commission, Gilliam's continued attempts to rectify his accounting practices, his good reputation and contributions to the community, and the fact that Gilliam has no prior disciplinary record in his twenty-three years of practice.

However, we believe that a public reprimand in this case would not adequately reflect the concern with which we view Code violations involving the handling of client trust accounts. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk*, 553 N.W.2d 322, 324–25 (Iowa 1996) (noting that license suspension or revocation is ordinarily imposed when lawyers convert funds entrusted to them). In addition to the mishandling of the 1993 Karan Beebe check, respondent had persistent negative balances in other trust subaccounts, which is impermissible. An attorney is responsible for the manner in which his employees handle his trust accounts. The attorney must adequately and continuously supervise such accounts. Respondent did not do so here.

We therefore conclude that Gilliam's license to practice law in Iowa should be and is suspended indefinitely with no possibility of reinstatement for thirty days from the date of this opinion. We have considered other arguments raised by the parties but find it unnecessary to address them.

Costs are taxed to Gilliam pursuant to Iowa supreme court rule 118.22.

**LICENSE SUSPENDED.**