IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,

v.

Luis HERRERA, Respondent.

No. 96–2122.

Supreme Court of Iowa.

March 26, 1997.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Robert G. Tully of Galligan, Tully, Doyle & Reid, P.C., Des Moines, for respondent.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

A first reading of the record in this lawyer discipline case suggests a more harsh sanction than the public reprimand proposed by the grievance commission. Nothing commands our attention more quickly than when a lawyer mishandles a client's money. Our cases are clear that an attorney who does so will not be excused by claiming confusion from the press of work or by blaming the mishandling on an employee. Our past cases would seem to call for a suspension for this attorney but, after careful consideration, we agree with and accept the recommended public reprimand.

Respondent Luis Herrera has been in the general practice of law since 1981. The matters involved in this proceeding occurred between December 1993 and January 1995, when Herrera undertook solo practice. He had previously left the business aspects of his practice to a partner and largely confined his attention to his efforts as a litigator. When he began solo practice, Herrera hired Lisa Sanderson (now Lisa Schwartz) as his "office manager," expecting her "to do [his] billing, handle the books, do the deposits, handle the employees if there was discipline she felt necessary, to take care of those matters, type, do some paralegal work." Herrera's other employees at the time included a legal assistant and a secretary.

In its findings and conclusions, the grievance commission faulted Herrera for entrusting his new office manager with responsibilities for which she was not equipped. This

entrustment probably stemmed at least in large part from Herrera's own wholesale lack of understanding of the business aspects of the practice.

In addition to Ms. Schwartz's lack of skills, she was shown to harbor some enmity toward Herrera. The grievance commission explained:

Respondent attempted to shift a great deal of blame for his situation on his former office manager, Lisa Sanderson Schwartz. Some of this is justified. There was substantial evidence produced that she was willing to see Herrera in trouble with this commission. Because she was in control of Herrera's office more than he was, she had ample opportunity to modify, conceal or destroy records without anyone else's knowledge. In fact, when the client security fund auditor conducted the audit of Herrera's trust account, Herrera was quite willing and cooperative with the auditor's request to show him whatever documents or computer stored information he could locate.

The problem was that he was unable to locate many items. The computer generated material (time and expense records) were quite incomplete and in some cases, quite inaccurate. For example, time entries appeared for attorneys with whom Herrera was not even associated during the time in question. Also Herrera had difficulty providing the client security fund auditor with computer generated information because, aside from the fact that Herrera didn't know how to operate the computer, Ms. Schwartz had taken the printer when she left his employ, as "security" for payment of additional funds she believed were owed her.

Of the thirteen matters—or incidents— subject to inquiry, the commission found six were not established or concerned conduct not subject to criticism. On our de novo review we agree with this assessment and give them no further consideration.

Six of the remaining matters fell into a pattern. Respondent would undertake to represent a client with no engagement letter or fee agreement. A retainer was paid and deposited, not in a trust account, but in re-spondent's office account. This was prior to his rendering of legal services. When challenged, Herrera refunded the fee.

The thirteenth incident involved a tort suit in which a substantial recovery netted a surprisingly low amount for respondent's successful client. Although the client was satisfied with the result, the commission nevertheless pressed for an explanation for the low payout. Herrera could produce no records and was unable to explain the amounts paid from his trust account for out-of-pocket expenses. The commission finally accepted Herrera's reconstruction of the events, but found a violation of DR 9–103 because of his failure to maintain appropriate records.

The extent to which Herrera was and remained out of touch with these important matters is difficult to fathom. He was not even aware that his office had billing and accounting problems until Ms. Schwartz brought these matters to light by instituting this proceeding. Herrera was completely co-operative and candid with a client security commission auditor. Upon discovering the accounting problems, he hired a certified public accountant. At the time of the hearing before the commission he was still trying to correct bookkeeping problems created during the tenure of Ms. Schwartz.

I. DR 9–102 of the code of professional responsibility for lawyers requires that all clients' funds be held in a separate trust account. Commingling of trust funds with the office or personal funds of the lawyer is strictly prohibited. This requirement is absolute and binding on all practitioners. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gilliam,* 560 N.W.2d 1, 3 (Iowa 1997); *Committee on Prof'l Ethics & Conduct v. Thompson,* 328 N.W.2d 520, 523 (Iowa 1983). An attorney may not, in the absence of express direction by the client, withdraw funds from the trust account in order to pay attorney fees. *Committee on Prof'l Ethics & Conduct v. Harris,* 524 N.W.2d 179, 181 (Iowa 1994). A lawyer is not justified for mismanaging trust funds because of the attorney's ill health, emotional problems, personal disorders or press of work. *Committee*

on *Prof'l Ethics & Conduct v. Boysen,* 480 N.W.2d 26, 27 (Iowa 1992); *Committee on Prof'l Ethics & Conduct v. Cook,* 409 N.W.2d 469, 470 (Iowa 1987); *Committee on Prof'l Ethics & Conduct v. Hoffman,* 402 N.W.2d 449, 451 (Iowa 1987). DR 9–103 requires a lawyer to maintain books and records adequate to demonstrate compliance with DR 9–102. Under this rule we expect records in accordance with sound accounting practices. *Committee on Prof'l Ethics & Conduct v. Behnke,* 486 N.W.2d 275, 278 (Iowa 1992).

 The grievance commission was clearly correct in finding that Herrera violated DR 9–102 because of mismanagement of his clients' funds, and violated DR 9–103 for failing to maintain adequate records. It is almost unnecessary to say that he in no way escaped his responsibility by entrusting the trust account's management to an unqualified person.

II. Fixing an appropriate sanction is our only difficult problem on review. Like the grievance commission, we are impressed with Herrera's honesty. He converted no client's money to his personal use. But this is scarcely a ground for leniency because such a conversion would invite almost sure license revocation. *Committee on Prof'l Ethics & Conduct v. Tullar,* 466 N.W.2d 912, 913 (Iowa 1991). Although we demand and expect cooperation with, and candid responses to, commission auditors, it is to Herrera's credit that he did respond appropriately and hired a certified public accountant to put his office affairs in order.

The commission was strongly influenced in its comparatively mild sanction recommendation by what it perceived as duplicity by Ms. Schwartz. It would be easy to overreact in this regard for two reasons. In the first place it is not completely clear that Ms. Schwartz's hostility alone led to the mishandling of the funds. To some extent at least, her hostility may have been a reaction to a grossly mismanaged law office. In the second place we have a strong negative reaction to a lawyer's attempt to blame professional shortcomings on an employee. *Committee on Prof'l Ethics & Conduct v. Postma,* 430 N.W.2d 387, 389 (Iowa 1988) (blaming a sec-

retary is to be viewed "with unbounded skepticism, and never with admiration").

After careful consideration we conclude that a reprimand and not a suspension is appropriate. Herrera's honesty, his forthright responses, and his move to correct his operation all weigh in his favor. And, although he cannot blame his office manager for failing to discharge his own responsibilities, it is apparent that a certain portion of her mismanagement was, if not motivated, at least influenced by her resentment of Herrera.

We accordingly reprimand Luis Herrera for failing to comply with DR 9–102 and DR 9–103 of the code of professional responsibility for lawyers.

**ATTORNEY REPRIMANDED.**