IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,

v.

John T. BRIBRIESCO, Respondent.

No. 97–1598.

Supreme Court of Iowa.

Dec. 24, 1997.

David J. Grace, Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

John T. Bribriesco, Bettendorf, pro se.

Considered by HARRIS, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

This lawyer discipline case presents an obvious violation of the canons of ethics, but a perplexing question regarding an appropriate sanction. On the one hand there was a reckless disregard for our rule demanding that clients' funds be placed in a trust account, a violation commonly calling for at least a license suspension. On the other

hand there was no misappropriation, and no clear showing of commingling of funds. The grievance commission recommendation of a thirty-day suspension seems eminently reasonable, and commission recommendations always weigh heavily in our consideration. Nevertheless, after considerable reflection, we conclude that a public reprimand is sufficient and appropriate.

In generations past it was not uncommon for lawyers to conduct their professional fiscal affairs from, and to hold clients' funds in, an office safe. This discredited practice has long been prohibited by DR 9–102 of the Iowa code of professional responsibility for lawyers.[1] As will be seen, this proceeding had its genesis in an office operation which should have been consigned to the nineteenth century, and which was in stark contrast with the requirements of DR 9–102.

Respondent-attorney John T. Bribriesco has practiced law since 1978. Although he has primarily been a sole practitioner, he currently practices with two other attorneys. His is a busy practice, concentrated in criminal and family law.

In April 1993 Bribriesco was approached by Paul Ramirez about representing Ramirez's friend, Antonio Cardenas. Cardenas was being held on various charges, including possession of a controlled substance with intent to deliver. Related charges arising from the same transaction were pending in both Iowa and Illinois. Bribriesco was hired to obtain Cardenas' release from jail and was given $10,000 in cash by Ramirez. There was no written fee agreement or engagement letter. The cash went, not into Bribriesco's trust account, but into his office safe. Bri-

briesco later took some of the cash home and hid it there.

At approximately the same time another $10,000 was received to be used for cash bond on the Scott County criminal charges. These funds were placed in respondent's trust account and are not at issue.

Bribriesco also received a third cash fund, $6000 from another of Cardenas' friends for bail money on the charge pending in Illinois. This bail money was not routed through Bribriesco's trust account, but rather was directly posted in the Illinois court. When $5400 of this amount was later released back to Bribriesco, $5000[2] was sent by two somewhat (two and four months) tardy cashier's checks. The refunded bail money was not routed through Bribriesco's trust account. Bribriesco explains the delay and casual handling of the refund on the basis of conflicting instructions he was receiving from his client.

Bribriesco believed the first $10,000 was not a retainer because the work he had been hired to do, obtaining Cardenas' release from jail, was virtually complete. So he felt he was not required to place the funds in his trust account. The justification is far from solid. Bribriesco stated he felt that if he had quit at that juncture he had already earned his fee. But at that point his hourly rate for clients was $110 to $115 per hour, and his billing records showed approximately thirteen hours performed.

Bribriesco responds by conceding $10,000 was too much for obtaining Cardenas' release from jail, but explains it was applied to other fees he had earned. He had in the interim agreed to represent Cardenas on the under-

---

1. DR 9–102 provides in material part:

> Preserving Identity of Funds and Property of a Client.
> A. All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in DR 9–102(C). All such funds received from clients for matters arising out of the practice of law in Iowa, as the term "practice of law" is employed in court rule 121, shall be deposited only in trust accounts located in Iowa. No funds belonging to the lawyer or law firm shall

be deposited in trust accounts except as follows:
> (1) Funds reasonably sufficient to pay service charges may be deposited therein.
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

2. The amount of Bribriesco's $400 deduction for his fee is not challenged.

lying charges. On a comparative basis he may well have felt the fee was reasonable. After remaining free a short time Cardenas was again arrested on an unrelated possession charge, and hired two attorneys from Chicago. They reportedly were paid between $78,000 and $102,000 to handle that case. Bribriesco remained as local counsel in the underlying case. After Cardenas was convicted in a Scott County bench trial, Bribriesco was briefly involved in his appeal.

A serious ramification results from a further failure. Bribriesco filed 1994 and 1995 combined statements on a questionnaire for our court, certifying that all retainers, regardless of size, and all client funds were kept in a trust account. He now admits these statements are false, though he insists he thought he answered truthfully at the time.

I. We recently explained the rules in a strikingly similar case:

> DR 9–102 of the code of professional responsibility for lawyers requires that all clients' funds be held in a separate trust account. Commingling of trust funds with the office or personal funds of the lawyer is strictly prohibited. This requirement is absolute and binding on all practitioners. An attorney may not, in the absence of express direction by the client, withdraw funds from the trust account in order to pay attorney fees. A lawyer is not justified for mismanaging trust funds because of the attorney's ill health, emotional problems, personal disorders or press of work. DR 9–103 requires a lawyer to maintain books and records adequate to demonstrate compliance with DR 9–102. Under this rule we expect records in accordance with sound accounting practices.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera,* 560 N.W.2d 592, 594–95 (Iowa 1997) (citations omitted).

Most of the facts in the present case square with those presented in *Herrera.* We have an apparently honest lawyer with an outrageously inadequate fiscal operation. His candor with our ethics board during the investigation, although demanded and expected of all subject lawyers, is to his credit. The distinguishing fact militating against

Bribriesco was his certifying that all clients' funds were held in a trust account. His explanation for these wrong certifications could appear plausible only to his own eyes and only at the time. The certifications were wrong because the funds were in his office safe, but in his confused view, clients' funds in the safe were held in trust. This view is of course unacceptable, and places Bribriesco on the perilous and razor-thin line between a candidate for suspension and a candidate for a severe reprimand. From a careful reading of the transcript, we conclude Bribriesco is an honest lawyer who has learned a bitter lesson concerning wayward fiscal practices.

II. We accordingly reprimand John T. Bribriesco for failing to comply with DR 9–102 of the code of professional responsibility for lawyers.

**ATTORNEY REPRIMANDED.**