# IN THE SUPREME COURT OF IOWA

No. 19–0499

Filed December 13, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**EDWARD F. NOYES,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

In attorney disciplinary action, grievance commission recommends suspension for multiple violations of ethical rules. **LICENSE SUSPENDED.**

Edward F. Noyes, Fairfield, pro se.

Tara van Brederode and Wendell J. Harms, Des Moines, for appellee.

**McDONALD, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against attorney Edward F. Noyes after an audit of his client trust account (CTA) revealed potential violations of the Iowa Rules of Professional Conduct. A division of the Iowa Supreme Court Grievance Commission found Noyes violated the rules in four respects and recommended this court suspend Noyes's license to practice law in this state for sixty days. We find and conclude Noyes violated the Iowa Rules of Professional Conduct, but we disagree with the commission's recommended suspension. We suspend Noyes's license to practice law in Iowa for thirty days from the filing date of this opinion.

I.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018). "The Board must prove ethical violations by a convincing preponderance of the evidence." *Id.* A convincing preponderance of the evidence lies between the preponderance-of-the-evidence standard in a civil case and the reasonable-doubt standard in a criminal case. *Id.* "We may impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation." *Id.*

II.

By way of background, Noyes obtained his license to practice law in Iowa in 1985. Since obtaining his license, Noyes has been publicly reprimanded on four separate occasions (1998, 2012, 2014, and 2016) for violations of the rules of professional conduct. The 2014 public reprimand arose out of Noyes's failure to provide a client with a contemporaneous written accounting of services performed in violation of Iowa Court Rule 45.7(4). *See* Iowa Ct. R. 45.7(4) (stating a lawyer must promptly provide a

client a full written accounting upon withdrawal of a fee or expense). The 2016 public reprimand arose out of Noyes's failure to adequately supervise a nonlawyer intern in violation of Iowa Rule of Professional Conduct 32:5.3. Like his most recent reprimands, this disciplinary proceeding also involves Noyes's failure to manage his CTA and supervise a nonlawyer employee.

In September 2015, an auditor for the Iowa Supreme Court Client Security Commission audited Noyes's CTA. The audit showed client funds in the CTA were $12,898.03 lower than they should have been. The causes of the deficiency were threefold. First, four clients had negative trust account balances in the total amount of $4162.70. Client Patrick Gunderson had a negative balance of $3000 since July 9, 2015. Gunderson's negative balance resulted from a series of advances Noyes made to Gunderson. Client Craig Howard had a negative trust account balance of $1102 since September 19, 2014. The negative balance in Howard's account resulted from Noyes over disbursing $1102 from the account. Noyes billed Howard for the amount of the over disbursement, but Howard did not pay the bill. Client Steve Knipfer had a negative balance of $55.35 since December 8, 2014. Client Emilee Steinbach had a negative balance of $5.35 since February 5, 2014. The last two negative client account balances were the results of improperly accounted for checks. Second, Noyes had not reimbursed the CTA for bank fees he paid when he received client funds by credit card payment. The accumulated credit card fees totaled $4900.88. Third, Noyes could not identify the clients associated with several CTA disbursements in the total amount of $3834.49.

Within five days of the audit results, Noyes reimbursed the CTA with earned fees that were still in the CTA. No clients suffered personal loss.

At the time of the audit, Noyes's firm used QuickBooks accounting software. Noyes admitted he was "personally responsible for the balancing of the trust account." He admitted that he had "no experience in QuickBooks software and relied upon [his] office manager" and a consultant. The office manager was Pam Breeding. She was responsible for the firm's accounting. The consultant was Paul Saipher. Saipher was an accountant and Certified Advanced QuickBooks ProAdvisor. Noyes hired Saipher to provide support with the installation of the software and to provide ongoing tech support, training, and consulting. Noyes paid Saipher approximately $7000 per year in consulting fees.

After the audit, Breeding revealed she did not fully understand how to use QuickBooks but had been afraid to tell anyone at the firm about her struggles with the program. Breeding admitted that several of the problems discovered in the audit were a result of her accounting mistakes and that she had not been properly conducting the monthly reconciliations. Breeding reported, "Other than working with Paul [Saipher] I had no training in QuickBooks or accounting and [became] confused easily when errors were made." Noyes does not deny that Breeding may have stated this to the auditor.

The Board filed the instant complaint against Noyes. The Board alleged Noyes provided financial assistance to a client, in violation of rule 32:1.8(e); commingled CTA and business funds and failed to keep proper records of client funds, in violation of rule 32:1.15(a); failed to follow Iowa Court Rules, chapter 45, in violation of rule 32:1.15(f); and failed to properly supervise staff, in violation of rule 32:5.3. The commission found the Board had proved the violations by a convincing preponderance of the evidence.

The commission recommended that Noyes's license be suspended for sixty days. Aggravating factors included Noyes's thirty-plus years of experience practicing law, his four previous public reprimands, and the similarity between the prior violations that resulted in public reprimands and the violations in this case. Mitigating factors included Noyes's cooperation during the disciplinary process, his willingness to adjust his accounting processes to prevent future mishandling of client funds, and the lack of client harm.

### III.

This matter was submitted to the commission on a stipulated record. *See id.* r. 36.16(1). The stipulation to facts "binds the parties, the grievance commission, and the supreme court." *Id.* r. 36.16(2). We "interpret the stipulation of facts with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings, issues involved, and any additional evidence elicited at a limited hearing." *Id.* The parties did not stipulate to the violations or sanctions, but even if they had, "[a] stipulation as to violations or sanctions is not binding on the grievance commission or the supreme court." *Id.* r. 36.16(3); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 549 (Iowa 2015) ("Stipulations of fact are controlling, but stipulations as to violations and appropriate sanctions do not bind us."). Based on the stipulated record, we make the following findings and conclusions.

### A.

We find Noyes violated Iowa Rule of Professional Conduct 32:1.8(e) when he advanced $3750 in funds to client Gunderson. The rule provides,

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

Noyes represented Gunderson in a workers' compensation dispute. On February 16, 2015, the parties mediated the dispute and reached a settlement agreement, which Gunderson accepted on February 18. On March 9, Noyes advanced $500 from the firm's business account to Gunderson. On March 19, Noyes advanced $500 from the CTA to Gunderson. On April 7, the workers' compensation commissioner filed an order approving the settlement agreement. On April 23, Noyes advanced $250 from the firm account to Gunderson, and on April 25, Noyes advanced $2500 from the CTA to Gunderson. On May 7, Noyes deposited the net settlement funds, $93,405.33, to the CTA.

Noyes does not dispute he provided financial assistance to Gunderson. He does contend the financial assistance was not in violation of rule 32:1.8(e) because there was no litigation pending at the time of the advances. Specifically, Noyes contends the workers' compensation matter was settled on February 18 when the parties reached a settlement agreement. We disagree. Noyes may be correct that the parties to the workers' compensation proceeding entered into an enforceable settlement agreement on February 18. *See Dillon v. City of Davenport*, 366 N.W.2d 918, 926 (Iowa 1985) (holding in a workers' compensation case that "an oral agreement of settlement that is to be reduced to writing is enforceable if the terms are settled"). But that fact is of no consequence. Although the litigation may have been settled, the matter was still pending. The lawyers involved in the case had to reduce the agreement to writing, present the agreement to the workers' compensation commissioner for

approval, *see* Iowa Code § 85.35(1) (2015), and disburse the settlement proceeds. We have previously noted that "the resolution of a client's pending lawsuit" includes "the administration of settlement funds." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 100 (Iowa 2010). Here, the disbursement of the settlement proceeds did not occur until after Noyes advanced funds to Gunderson.

Noyes also contends he did not commit an ethical violation because he did not violate the spirit of rule 32:1.8(e). He relies on comment 10 to the rule:

> Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation.

Iowa R. Prof'l Conduct 32:1.8(e) cmt. [10]. Noyes argues his intent here was not to encourage litigation but to provide support to his client until the settlement proceeds were distributed.

We disagree that Noyes's charitable intent excuses his noncompliance with rule 32:1.8(e). The rule prohibits financial assistance to a client except in two limited circumstances not applicable here. *See id.* r. 32:1.8(e)(1)–(2). Providing financial assistance to a client outside the purview of these two narrow exceptions, even for charitable reasons, violates the rule. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Shinkle*, 698 N.W.2d 316, 322, 325 (Iowa 2005) (issuing a public reprimand where attorney advanced funds to be used by the client for living expenses); *Comm. on Prof'l Ethics & Conduct v. Humphreys*, 524 N.W.2d 396, 398 (Iowa 1994) (holding that a client's serious financial needs do not affect whether an advance is a violation); *Comm. on Prof'l*

*Ethics & Conduct v. Harris*, 524 N.W.2d 179, 181 (Iowa 1994) ("[M]isconduct cannot be justified on the mere basis of lack of personal gain."); *Comm. on Prof'l Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 523 (Iowa 1979) (stating there is no exception "for charitable and humanitarian reasons" even if a client is "in extremely dire financial need").

We thus find and conclude a convincing preponderance of the evidence shows Noyes violated rule 32:1.8(e).

B.

We find Noyes violated Iowa Rule of Professional Conduct 32:1.15(a) and (f) when he comingled CTA funds and business account funds and failed to keep adequate account records.

Rule 32:1.15(a) states,

A lawyer shall hold property of clients . . . in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. . . . Complete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

Iowa R. Prof'l Conduct 32:1.15(a). The rule requires lawyers handle client funds with the level of care "required of a professional fiduciary." *Id.* r. 32:1.15 cmt. [1]. Pursuant to the rule, a lawyer may not comingle client funds with business funds. *See, e.g., id.* r. 32:1.15 cmt. [2] (stating "normally it is impermissible to commingle the lawyer's own funds with client funds"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 532 (Iowa 2011) (stating the rule prohibits comingling). Furthermore, "[a] lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order." Iowa R. Prof'l Conduct 32:1.15 cmt. [1].

Rule 32:1.15(f) states that "[a]ll client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." *Id.* r. 32:1.15(f). Chapter 45 "directs an attorney on how to properly maintain a client trust account." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 218 (Iowa 2015); *see* Iowa Ct. R. 45.1. As relevant here, rule 45.2(3) provides,

> *a.* A lawyer who practices in this jurisdiction must maintain current financial records as provided in these rules and required by Iowa Rule of Professional Conduct 32:1.15 and must retain the following records for a period of six years after termination of the representation:
>
> (1) Receipt and disbursement journals containing a record of deposits to and withdrawals from client trust accounts, specifically identifying the date, source, and description of each item deposited, as well as the date, payee, and purpose of each disbursement.
>
> (2) Ledger records for all client trust accounts showing, for each separate trust client or beneficiary, the source of all funds deposited, the names of all persons for whom the funds are or were held, the amount of such funds, the descriptions and amounts of charges or withdrawals, and the names of all persons or entities to whom such funds were disbursed.
>
> . . . .
>
> (6) Copies of records showing disbursements on behalf of clients.
>
> . . . .
>
> [*b.*](2) Receipts must be deposited intact and records of deposit should be sufficiently detailed to identify each item.

Iowa Ct. R. 45.2(3). The rule "dictates that financial records including ledger records, bank statements, check registers, copies of monthly trial balances, and monthly reconciliations of the client trust accounts, must be maintained by an attorney." *Cross*, 861 N.W.2d at 218.

Noyes violated rule 32:1.15(a) when he commingled business account funds with CTA funds. In handling Gunderson's workers' compensation matter, Noyes advanced money to Gunderson out of the CTA

and Noyes's business account and then transferred money between the accounts to try and reconcile them. The audit also showed Noyes failed to transfer earned fees from his CTA into the firm's business account. Earned fees are personal funds. Depositing earned fees into the CTA or allowing earned fees to remain in the CTA, as is the case here, are in violation of the rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Smith*, 885 N.W.2d 185, 193 (Iowa 2016) ("Some funds are inappropriate for deposit in a trust account, even if they are related to a lawyer's practice. For example, Smith deposited earned fees from court-appointed work— which she had earned by the time the state paid them and which were therefore personal funds—into the trust account."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 126–27 (Iowa 1999) (concluding an attorney violated the precursor to rule 32:1.15(b) when he "used his trust account for the deposit of earned fees"); *Humphreys*, 524 N.W.2d at 398 ("We have held that commingling of clients' funds is an absolute offense, one that does not lend itself to the defense that the lawyer's employees were responsible.").

In addition, a convincing preponderance of the evidence shows Noyes failed to keep complete records for the CTA. As discussed above, the audit showed several client accounts with negative balances. The audit also showed $3834.49 in disbursements from the CTA for which Noyes could not account and for which Noyes had no records.

Noyes largely concedes he failed to maintain his CTA and records of his CTA in accord with the rules, but he argues he should not be held responsible for office manager Breeding's accounting errors. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 481 (Iowa 2014) ("[A]n attorney does not violate . . . rule [32:5.3] when a nonlawyer makes a mistake that is not a direct consequence of the attorney's

inattentive supervision or instruction."); *Dunahoo*, 799 N.W.2d at 534 ("It seems plausible the subordinate simply made a mistake that was not a direct consequence of inattentive instruction or supervision by Dunahoo."). We disagree. Noyes is responsible for Breeding's conduct under Iowa Rule of Professional Conduct 32:5.3(c)(2). The rule provides "a lawyer shall be responsible for conduct" of a nonlawyer when "the lawyer is a partner or has comparable managerial authority in the law firm" and "knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." Iowa R. Prof'l Conduct 32:5.3(c)(2).

Here, Noyes admitted he had managerial authority in the law firm and had direct supervisory authority over Breeding. While Noyes did hire Saipher to provide consulting services to the firm, Noyes cannot delegate management and supervision responsibilities to a third person and then wash his hands of any rule violations. Instead, Noyes was obligated to ensure the services provided were in accord with Noyes's ethical obligations. *See id.* cmt. [3] ("When using such services outside the firm, a lawyer must make reasonable efforts to ensure that the services are provided in a manner that is compatible with the lawyer's ethical obligations.").

As the managing partner in his firm, Noyes failed to take reasonable remedial action despite these accounting issues. Noyes stated he did not understand his own accounting system. Nonetheless, he placed in charge a person who admitted she had no accounting training or specific training in QuickBooks. Noyes hired Saipher to assist with training Breeding. However, Noyes did not conduct sufficient inquiry to ensure the training was effective and Breeding was performing adequately in the position. The audit showed she was not. Breeding made errors related to reconciling

accounts, processing credit card fees, accounting for refused checks, maintaining separate accounts, and keeping account records. The deficiencies in the CTA were readily discoverable. The audit showed there were longstanding overdrawn CTAs at the time of the audit. One of the accounts had been overdrawn since February 2014 and three of the accounts had been overdrawn since December 2014. If Noyes had conducted even a cursory review of the accounts following monthly reconciliation, *see* Iowa Ct. R. 45.2(3)(*a*)(9), he should have had notice there were deficiencies and failures in his firm's accounting practices. An attorney does not escape his or her ethical duties "by entrusting the trust account's management to an unqualified person." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 594 (Iowa 1997).

Blaming an office manager for trust account violations is "view[ed] with unbounded skepticism, and never with admiration." *Comm. on Prof'l Ethics & Conduct v. Postma*, 430 N.W.2d 387, 389 (Iowa 1988). "[W]e have a strong negative reaction to a lawyer's attempt to blame professional shortcomings on an employee." *Herrera*, 560 N.W.2d at 595. "Nothing commands our attention more quickly than when a lawyer mishandles a client's money. Our cases are clear that an attorney who does so will not be excused . . . by blaming the mishandling on an employee." *Id.* at 593.

### C.

Finally, we conclude Noyes violated Iowa Rule of Professional Conduct 32:5.3(a). The rule provides a lawyer "shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer." Iowa R. Prof'l Conduct 32:5.3(a). For the same reasons set forth in the prior section, we find and conclude Noyes violated this rule. He failed to put in place measures sufficient to ensure his CTAs

were managed in accord with the rules of professional conduct, and the absence of such measures actually resulted in violations of the rules of professional conduct.

IV.

Having concluded the Board proved Noyes violated the rules of professional conduct, we now turn to the question of sanctions.

> We apply no standard sanction for any particular type of misconduct. Though we look to prior cases for guidance, we fashion sanctions based on the specific circumstances of each case.

> In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 200–01 (Iowa 2013) (citations omitted) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 880 (Iowa 2012)). "Our primary purpose for imposing sanctions is not to punish the lawyer but to protect the public." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 542 (Iowa 2013). While caselaw guides our decision, "no two attorney disciplinary cases are identical." *Lubinus*, 869 N.W.2d at 553. We use our caselaw to calibrate the appropriate sanction in light of the relevant mitigating and aggravating factors. *See id.* at 550.

When an attorney advances funds to a client in violation of rule 32:1.8(e), the typical sanction is a public reprimand. *See Shinkle*, 698 N.W.2d. at 324–25 (stating advancing funds to a client is not a serious infraction and ordering a public reprimand).

Violations of rule 32:1.15(a) and (f) are generally subject to a wider range of sanctions, depending on the circumstances of the case.

> Sanctions for trust account and accounting violations span from "a public reprimand when the attorney, in an isolated instance, failed to deposit funds into his trust account because he believed the fees to be earned" to "suspensions of several months where the violations were compounded by severe neglect, misrepresentation, or failure to cooperate." In cases warranting more serious discipline, additional violations or aggravating circumstances were present.

*Cross*, 861 N.W.2d at 225 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012)).

In *Herrera*, the attorney received a public reprimand for commingling funds and failing to keep proper trust account records. 560 N.W.2d at 595. The mitigating factors were the attorney's cooperation during the disciplinary process and the changes he made to his bookkeeping system to prevent future violations. *Id.* ("Herrera's honesty, his forthright responses, and his move to correct his operation all weigh in his favor."). While we did not give it strong consideration, we noted an additional mitigating factor was the attorney did not convert any client funds for his own use. *See id.* ("He converted no client's money to his personal use. But this is scarcely a ground for leniency because such a conversion would invite almost sure license revocation."). *But see Harris*, 524 N.W.2d at 181 (giving stronger consideration to a lack of personal gain, stating that while "misconduct cannot be justified on the mere basis of lack of personal gain[,] . . . this fact mitigates in favor of a lighter sanction" (citation omitted)).

In *Lubinus*, we ordered a thirty-day suspension for an attorney who violated rule 32:1.15 by failing to reimburse his CTA and withdrawing unearned funds from his CTA. 869 N.W.2d at 553–54. Mitigating factors were the attorney's cooperation throughout the disciplinary process, the

lack of harm to his clients, his "proactive corrective measures" to prevent future violations, and his lack of experience being a solo practitioner. *Id.* at 552–53. Aggravating factors were the attorney "committed more than a single, isolated trust account violation" and that his accounting errors were intentional. *Id.* at 554.

In *Iowa Supreme Court Attorney Disciplinary Board v. Morris*, we suspended an attorney's license for six months. 847 N.W.2d 428, 437 (Iowa 2014). In *Morris*, the attorney's trust account mismanagement was severe and persistent over time. *Id.* at 436. Several aggravating factors supported a longer suspension. Specifically, the attorney's dishonesty on his client security questionnaire, the pervasiveness of the violations, the attorney's significant experience practicing law, and three prior suspensions. *Id.* at 436–37.

In *Iowa Supreme Court Attorney Disciplinary Board v. Kersenbrock*, we approved a thirty-day suspension of a lawyer's license for pervasive trust account violations. 821 N.W.2d 415, 422 (Iowa 2012). The attorney in that case failed to deposit client retainers into a trust account, kept inadequate trust account records, and misrepresented her trust account practices on her client security questionnaire. *Id.* at 419–21. Mitigating factors in that case militated against a longer suspension. Specifically, we noted no clients were harmed, the attorney acknowledged the deficiencies in her accounting practices, and she undertook efforts to address those deficiencies. *Id.* at 422.

In light of the foregoing, we conclude Noyes's license should be suspended for thirty days. There are several aggravating circumstances in this case. Noyes has been publicly reprimanded on four prior occasions. His two most recent violations relate to violations in this case. *See Marks*, 831 N.W.2d at 201 ("Significant distinguishing factors in the imposition of

punishment center on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." (quoting *Cannon,* 821 N.W.2d at 880)). Additionally, Noyes is a seasoned attorney with over thirty years of experience. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma,* 920 N.W.2d 813, 819 (Iowa 2018) ("Years of experience as an attorney can be considered an aggravating factor.").

Militating against a longer suspension are several mitigating factors. Noyes was cooperative throughout the disciplinary process. As shown in *Herrera* and *Lubinus,* while cooperation is expected, honesty and responsiveness may be considered. *See Lubinus,* 869 N.W.2d at 553; *Herrera,* 560 N.W.2d at 595. Second, no client suffered economic harm by Noyes's violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness,* 844 N.W.2d 456, 467 (Iowa 2014) (citing lack of harm to the client as a mitigating circumstance). Third, Noyes proactively changed his bookkeeping system after the audit, which included hiring a new bookkeeping employee and changing his accounting software. *See Nelson,* 838 N.W.2d at 543 ("[C]orrective measures, including improving billing and accounting practices, investing in new technology, and employing additional administrative help are mitigating factors."). Finally, Noyes's misconduct was not motivated by personal gain.

We suspend Edward Noyes's license to practice law for thirty days. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Noyes must comply with the notification requirements of rule 34.24. *See id.* r. 34.24. The costs of this proceeding are assessed against Noyes pursuant to Iowa Court Rule 36.24(1). Unless the Board files an objection, Noyes's license will be automatically reinstated after the thirty-day period of suspension on the condition that all costs have been paid. *See id.* r. 34.23(2).

**LICENSE SUSPENDED.**