# IN THE SUPREME COURT OF IOWA

No. 43 / 07–1814

Filed May 9, 2008

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JEFFREY M. IRELAND,**

Respondent.

On review of the report of the Grievance Commission.

Grievance Commission report in disciplinary proceeding recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Jeffrey M. Ireland, Ozark, Missouri, pro se.

**PER CURIAM.**

This case comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Commission found the respondent, Jeffrey M. Ireland, violated the Iowa Code of Professional Responsibility by neglecting a client's legal matter, by not providing an accounting or return of retainer funds to the client, by failing to return personal papers, by failing to notify the client he had closed his office, and by failing to cooperate with the Iowa Supreme Court Attorney Disciplinary Board in its investigation. The Commission recommends suspension of the respondent's license with no possibility of reinstatement for two years. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the Commission, we find the respondent committed the charged ethical violations and suspend his license to practice law for six months.

## I. Standard of Review.

Our review of attorney disciplinary proceedings is well established. The Commission's findings are reviewed de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk,* 729 N.W.2d 812, 815 (Iowa 2007). Although we give the Commission's findings and recommendations respectful consideration, we are not bound by them. *Id.* The Board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad,* 723 N.W.2d 791, 791–92 (Iowa 2006).

> This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission."

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## II. Factual Findings.

At the time of the conduct at issue here, Jeffrey Ireland was an Iowa lawyer who had practiced in several communities in the state. In January 2002 Ireland was maintaining a law office in Panora, Iowa. The matter giving rise to the Board's complaint involved the estate of Leland Barker.

In early 2002 Ireland agreed to act as the attorney for the estate of Leland Barker. The decedent's son, Dale Barker, met with the respondent on three separate occasions to discuss the estate. At the first meeting, Barker provided Ireland with his father's will and other paperwork. At the second meeting, the respondent agreed to handle the estate for a $2000 fee. Barker's mother and widow of the decedent, Pauline Barker, also met briefly with the respondent on one occasion. In February 2002 Barker provided Ireland with a $1000 check written on Pauline's account. The memo portion of the check read "retainer for L.G. Barker estate." Ireland deposited the check in his trust account.

Ireland failed to take any action on behalf of the estate. In May 2002 he closed his law office in Panora without notifying the Barkers. The Barkers never received an accounting or refund of their retainer. Ireland did not return their personal papers, including the decedent's will. The Barkers eventually sought new counsel to handle the estate, which was subsequently successfully closed.

In March 2003 Pauline Barker filed a complaint with the Board. In August 2005 the Board wrote to the respondent requesting a response to the complaint and all records and documents showing the respondent's handling of the $1000 retainer. In his response, Ireland asserted he was

retained to prepare living trust documents for Dale and Pauline, not to probate Leland's estate. He claimed he had tried to locate the Barkers prior to closing his office, but was unable to do so due to the fact that he had no mailing address for them. Ireland stated he would return the clients' materials if given a current address. The respondent also asked for more time to retrieve the documents requested by the Board.

Subsequent requests by the Board produced a final billing statement that was never received by Dale or Pauline Barker, but the respondent did not produce the trust account statements sought by the Board. The respondent did, however, provide copies of the drafts of the living trusts he claimed to have prepared for the Barkers.

On January 24, 2007, the Board filed a complaint against the respondent with the Grievance Commission, claiming various violations of the Iowa Rules of Professional Responsibility. The Board asserted Ireland's failure to take action on the Barker estate violated DR 6–101(A)(3) (neglect), DR 7–101(A)(1) (failing to meet lawful objectives of client), and DR 1–102(A)(5) and (6) (prohibiting conduct prejudicial to the administration of justice and conduct that adversely reflects on the fitness to practice law). The Board alleged Ireland's failure to return the Barkers' documents violated DR 2–110(A)(2) (lawyer shall not withdraw until reasonable steps have been taken, including delivery of client's papers and property to the client) and DR 9–102(B)(4) (lawyer shall promptly deliver to client property that client is entitled to receive). It also asserted the respondent's failure to fully cooperate with the Board violated DR 1–102(A)(5) and (6). Finally, the Board alleged Ireland's failure to provide his clients with an accounting of the advance fee payments and failure to promptly return funds they were entitled to receive was a violation of DR 9–102(B)(3) and (4) (lawyer shall maintain

records of all funds of the client coming into lawyer's possession and render appropriate accounting and promptly pay or deliver to the client funds the client is entitled to receive).

A hearing before a panel of the Grievance Commission was held on October 12, 2007. Dale Barker testified to the circumstances surrounding the respondent's retention to handle his father's estate.[1] He testified that after a couple of meetings with the respondent, a retainer of $1000 was written on his mother's account. The check contained the address of the residence that both Barkers had resided at for years and where Pauline Barker had resided for over sixty years. When Barker discovered Ireland had closed his office, Barker left numerous messages on the respondent's answering machine, all of which were unreturned. He also sent a certified letter asking the respondent to return his papers and the retainer. Barker received a signed return receipt for the letter but nothing else. The respondent, Barker testified, kept his mother's $1000 retainer without conferring any benefit on them and without providing any accounting for the funds received.

Ireland did not attend the hearing. Now living in Missouri, the respondent advised the Commission by letter that he did not have the funds to travel to Des Moines and had no intention of returning to Iowa to practice law. He maintained, however, that he did not misuse the retainer and completed the matter that he was hired to do—prepare living trusts.

The Commission found the Board had met its burden of proving the violations alleged in the complaint. Specifically, the Commission found Ireland had accepted employment to probate Leland Barker's

---

[1]Pauline Barker died prior to the Commission's hearing.

estate and then did nothing to achieve this end. He accepted a $1000 retainer, but never made any accounting to his clients. Moreover, the Commission concluded, there was no credible evidence in the record that showed Ireland did anything that would allow him to keep any fee. In addition, he failed to return the clients' papers upon request as he was required to do. Finally, Ireland abandoned his clients after getting their money and then failed to cooperate with the Board's requests for information.

In considering the appropriate sanction, the Board found several aggravating circumstances, including prior disciplinary actions and a current suspension. In addition, the Commission found Ireland evasive and untruthful with the Board in its investigation of the matter. Based upon these findings, the Commission recommended Ireland's law license be suspended for two years. Prior to reinstatement, the Commission recommended the respondent be required to provide proof that all client property and the $1000 retainer had been returned to Barker.

### III. Ethical Violations.

The evidence established that Ireland completely failed to perform the legal work he had contracted to do, a violation of Iowa Code of Professional Responsibility DR 6–101(A)(3) ("a lawyer shall not neglect a client's legal matter"). *See Gottschalk,* 729 N.W.2d at 817 (stating neglect often involves a lawyer doing little or nothing to advance the interests of his client); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 551 (Iowa 2004) (stating professional neglect involves failure to perform those obligations that a lawyer has assumed). Such action constitutes not only a disservice to the client, but is also conduct prejudicial to the administration of justice and conduct that reflects adversely on the fitness to practice law. *See Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 817 (Iowa 2007); Iowa Code Prof'l Responsibility DR 1–102(A)(5), (6).

Ireland's abandonment of his client, prior to performing the contracted legal services, also resulted in his failure to meet the lawful objectives of his client, a violation of DR 7–101(A)(1).  This neglect and abandonment were compounded by the fact Ireland made no attempt to notify his clients of his withdrawal or to return their paperwork or retainer to them.  Contrary to his assertions, the evidence established Ireland made no effort to contact the Barkers, whose address had been unchanged for years.  Despite the Board's repeated requests, the respondent failed to provide his clients with a final billing or the Board with an accounting of the trust fund disbursement.  Thus, the Board has established by a convincing preponderance of the evidence violations of DR 2–110(A)(2) (lawyer shall not withdraw until reasonable steps have been taken, including delivery of client's papers and property to the client) and DR 9–102(B)(3) and (4) (requiring lawyer to maintain records and render appropriate accounting and promptly deliver funds and property the client is entitled to receive).  Finally, Ireland's failure to fully cooperate with the Board also constituted conduct prejudicial to the administration of justice and reflected adversely on his fitness to practice law in violation of DR 1–102(A)(5) and (6).  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy,* 722 N.W.2d 199, 205 (Iowa 2006).

**IV.  Sanction.**

In fashioning an appropriate sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating

circumstances. *Id.* The specific facts and circumstances of each individual case determine the form and extent of a disciplinary sanction. *Id.* "Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen,* 712 N.W.2d 101, 104 (Iowa 2006).

The sanction for neglect of client legal matters generally ranges from a public reprimand to a six-month suspension. *Gottschalk,* 729 N.W.2d at 821. Harm resulting to the client and multiple incidents of neglect are considered aggravating circumstances warranting a more serious sanction. *Id.* Misrepresentations and past disciplinary history are also factors that warrant a more serious discipline than simple neglect. *Id.*

In this case, the Barkers were harmed by the respondent's failure to return the unearned retainer. Moreover, the respondent's continued assertions that he was not hired to probate the estate have been shown to be false by the testimony presented in this case, and these misrepresentations to the Board and the Commission constitute further aggravating circumstances.

In addition, the evidence establishes the respondent has had prior disciplinary sanctions including a private admonition in July 2002 and a public reprimand in December 2002 relating to incidents of neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland,* 723 N.W.2d 439, 440 (Iowa 2006). More recently, in 2006, Ireland's license to practice law was suspended for not less than three months for two complaints based upon neglect. *Id.* at 441–42. The neglect of the Barker matter occurred in 2002, prior to this court's suspension of the respondent's license in 2006. The underlying neglect, by itself, demonstrates the same pattern

of conduct found in the prior disciplinary case, thereby arguably warranting only an additional public reprimand. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman,* 729 N.W.2d 801, 806 (Iowa 2007) (similar violations occurred during same time frame as prior acts resulting in suspension; reprimand warranted). However, additional violations, including the respondent's failure to cooperate with the Board, misrepresentations to the Board, and failure to return clients' papers and funds, constitute additional aggravating factors. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo,* 710 N.W.2d 226, 233–36 (Iowa 2006).

Ireland has indicated he has no plans to resume the practice of law, thereby making suspension perhaps unnecessary for the protection of the public or for deterrence. However, given the aforementioned aggravating circumstances, an additional suspension is consistent with promoting public confidence in the justice system and maintenance of the reputation of the bar as a whole. The commission recommends we suspend Ireland's license to practice law for two years. While we agree that Ireland's misconduct is serious, we conclude that a less severe sanction is warranted under the specific facts of this case. Accordingly, we conclude a six-month suspension of Ireland's license to practice law is an appropriate sanction.

## V. Conclusion.

We suspend Ireland's license to practice law with no possibility of reinstatement for at least six months from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3).

Upon any application for reinstatement, the respondent shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule

35.13. In addition, as a condition to any reinstatement, the respondent shall satisfy this court that all client property has been returned to Dale Barker and that the respondent has repaid the $1000 retainer that was paid to him by the Barkers. Costs are taxed to the respondent pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**

This opinion shall be published.