# IN THE SUPREME COURT OF IOWA

No. 14–1577

Filed January 30, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

    Complainant,

vs.

**CAMI N. ESLICK,**

    Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney violated several court rules and rules of professional conduct and recommends suspension. **LICENSE SUSPENDED.**

Charles L. Harrington, David J. Grace (until withdrawal), and Elizabeth E. Quinlan, Des Moines, for complainant.

Cami N. Eslick, Indianola, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) charged attorney Cami Noelle Eslick with violating rules of professional conduct after a trust account audit revealed numerous deficiencies. Eslick admitted all allegations in the Board's complaint. After a hearing, the Grievance Commission found Eslick violated several rules and recommended suspension of her license for thirty days.

## I. Background Facts and Proceedings.

Eslick was admitted to the Iowa bar in 2005. She has operated her solo practice in Warren County since 2008. In 2011, an auditor from the Client Security Commission instructed Eslick to rectify several deficiencies in her trust accounting practices. Following up on those instructions, the Client Security Commission audited Eslick again in January 2013 after she received several trust account overdraft notices. The auditor requested numerous documents from Eslick, including trust account bank statements, receipt and disbursement journals, ledger records, reconciliations, and a check register. However, Eslick failed to provide them promptly.

A month passed, and the auditor's request for access to Eslick's records had not been honored. Eslick and the auditor attempted to meet for a follow-up appointment several times, but weather and illness interfered and the appointment was never rescheduled. The Client Security Commission issued a notice of delinquency on March 22, 2013, and on April 8, Eslick produced some of the requested documents. When she provided them, Eslick stated, "I will admit my account is a mess. I kept thinking I could get it straightened out, but I didn't realize h[ow] bad of a mess it was."

The auditor examined the documents and found the funds in Eslick's trust account were nearly $8000 short. In several instances, Eslick's records showed clients were credited for funds received, but no corresponding deposits were made to the trust account. Exacerbating the problem, Eslick failed to maintain records mandated by court rules and neglected her obligation to perform monthly trust account reconciliations. Further, the auditor determined Eslick had commingled personal funds—derived from an operating loan from her father—with client funds in the trust account. Eslick explained that she considered the clients' funds she didn't deposit in the trust account "as funds being removed from" that operating loan. However, she completely depleted the loaned funds and withdrew client funds before earning them. In April 2013, Eslick deposited funds to bring the trust account into balance.

On May 6, 2014, the Board filed a complaint with the grievance commission alleging Eslick violated Iowa Rule of Professional Conduct 32:1.15 and Iowa Court Rules 45.1, 45.2, and 45.7. The complaint alleged the audit revealed several instances of misconduct on Eslick's part: failing to deposit all unearned fees and prepaid expenses into her trust account, commingling personal funds with those of her clients, failing to maintain a receipt and disbursement journal and check ledger for the trust account, failing to perform trust account reconciliations, withdrawing fees from the account without notifying clients, failing to maintain copies of accountings to clients, and operating with a deficiency of nearly $8000 in her trust account. On June 27, 2014, Eslick filed an answer admitting each of the violations alleged in the complaint.

On August 27, 2014, the matter came on for hearing before the grievance commission. Eslick expressed remorse, stating, "There are no

excuses for not keeping my books. I knew better." She explained she had neglected her trust accounting obligations because she took on more clients than she could handle and became overwhelmed. She noted despite her record-keeping and accounting missteps, no clients were financially harmed; and since the 2013 audit, she has reformed her trust accounting procedures such that her accounts balance "to the penny" every month. Further, she now takes medication for attention deficit disorder and has learned coping skills through therapy. These measures, she explained, now equip her to manage her very full workload without becoming overwhelmed. Eslick emphasized her violations of the applicable rules were committed without intent to defraud or steal from her clients.

Following the hearing, the commission found Eslick violated Iowa Rule of Professional Conduct 32:1.15 and Iowa Court Rules 45.1, 45.2, and 45.7. Specifically, the commission found Eslick violated rule 32:1.15(b) by commingling personal funds with those of her clients; that she violated rule 45.2(3)(*a*)(9) by failing to perform trust account reconciliations; that she violated rules 32:1.15(c), 45.1, and 45.7(3) by failing to deposit advance fee payments into the trust account; and that she violated rule 45.7(4) by failing to notify clients when their funds were withdrawn from her trust account. Taking into account Eslick's prior reprimand for rules violations unrelated to trust account management, the commission recommended a thirty-day suspension.

## II. Scope of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 35.11(1); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 433 (Iowa 2014). "The Board must prove the attorney's . . . misconduct by a convincing preponderance of the evidence." *Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 470 (Iowa 2014). This standard "places a burden on the Board that is higher than the burden in civil cases but lower than the burden in criminal matters." *Id.* The Board's burden is also lower than "clear and convincing," the highest civil standard of proof. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 667 (Iowa 2013); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 254 (Iowa 2012). "We respectfully consider the commission's recommendations, but they are not binding upon us." *Morris*, 847 N.W.2d at 433.

**III. Analysis.**

**A. Rule Violations.** The Board alleged that Eslick violated Iowa Rule of Professional Conduct 32:1.15 and Iowa Court Rules 45.1, 45.2, and 45.7. Eslick admitted each paragraph of the Board's complaint. "Factual matters admitted by an attorney in an answer are deemed established, regardless of the evidence in the record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Alexander*, 727 N.W.2d 120, 122 (Iowa 2007).

1. *Rule 32:1.15.* Three portions of rule 32:1.15 are relevant to our adjudication of this case. First, "[a] lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose." Iowa R. Prof'l Conduct 32:1.15(b). Second, "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." *Id.* r. 32:1.15(c). Finally, rule 32:1.15 incorporates chapter 45 of the Iowa Court Rules governing trust account procedures. *Id.* r. 32:1.15(f). Therefore, a violation of an attorney's

obligations under chapter 45 also constitutes a violation of rule 32:1.15(f).

We find Eslick violated rule 32:1.15(b) because the funds loaned by her father and deposited in the trust account were personal funds and were not used for the sole purpose of paying bank service charges. We further find Eslick violated rule 32:1.15(c) by failing to deposit in her trust account advance fees received from her clients.

2. *Rule 45.1.* Rule 45.1 provides that "[f]unds a lawyer receives from clients . . . for matters arising out of the practice of law in Iowa *shall* be deposited" in a client trust account. Iowa Ct. R. 45.1 (emphasis added). We find that Eslick's failure to deposit all client funds in a trust account, as required by rule 32:1.15(c), also constituted a violation of rule 45.1.

3. *Rule 45.2.* Rule 45.2(3)(*a*) requires lawyers to maintain current financial records. Iowa Ct. R. 45.2(3)(*a*). In particular, lawyers must keep receipt and disbursement journals, keep ledger records, and perform monthly account reconciliations. *Id.* r. 45.2(3)(*a*)(1)–(2), (9). Eslick admitted she did not maintain the journals or ledger records and did not perform monthly reconciliations. We find Eslick violated rule 45.2(3).

4. *Rule 45.7.* Two provisions of rule 45.7 are applicable here. First, "[a] lawyer *must* deposit advance fee and expense payments from a client into the trust account and may withdraw such payments only as the fee is earned or the expense is incurred." Iowa Ct. R. 45.7(3) (emphasis added). Second, "[a] lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting." *Id.* r. 45.7(4).

We find Eslick violated both of these provisions because she failed to deposit client funds in the trust account and failed to notify clients when she made withdrawals from the account containing funds loaned by her father. Accordingly, we find the Board has proven Eslick violated rule 45.7(4). Together, the violations of chapter 45 also resulted in a violation of rule 32:1.15(f).

**B. Sanction.** When we review attorney disciplinary matters, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission." Iowa Ct. R. 35.11(1); *see also Morris*, 847 N.W.2d at 435. "We give respectful consideration to the commission's recommendation. However, the issue of appropriate sanction is exclusively within this court's authority." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, ___ N.W.2d ___, ___ (Iowa 2014). There is no standard sanction for any individual rule violation; we evaluate each case individually but still consider prior cases instructive. *Morris*, 847 N.W.2d at 435. When determining a sanction, we consider the type of violation, a deterrent purpose for other lawyers, the need to protect the public, and the need to maintain our profession's reputation. *Id.* We also consider any aggravating and mitigating circumstances. *Id.* at 435–36.

We have considered previous discipline—including reprimands—to be aggravating factors when determining appropriate disciplinary sanctions. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 840 N.W.2d 295, 303 (Iowa 2013); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 269 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 869 (Iowa 2010). Eslick was publicly reprimanded in 2012 for neglecting client matters. Although the conduct for which she was reprimanded in 2012 did not involve trust

account violations, we nonetheless consider Eslick's previous reprimand an aggravating factor here.

"Personal illnesses, such as . . . attention deficit disorder, do not excuse a lawyer's misconduct but can be mitigating factors." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bowles*, 794 N.W.2d 1, 7 (Iowa 2011); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 799–800 (Iowa 2010). Eslick testified before the commission that she is receiving treatment for attention deficit disorder and that the treatment will assist her in managing her trust account going forward. We acknowledge her recognition of the need for treatment, and her pursuit of treatment, as a mitigating factor.

Lastly, Eslick made no attempt to deceive the auditor, the Board, or the commission, and cooperated fully during the proceedings. Further, she appeared genuinely remorseful in all communications with the auditor, Board, and commission. Even though "we . . . expect cooperation with, and candid responses to, commission auditors," remorse and cooperation generally mitigate our sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 595 (Iowa 1997); *see also, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 294 (Iowa 2013); *Taylor*, 814 N.W.2d at 268; *cf. Morris*, 847 N.W.2d at 437 (considering the lawyer's false representation that he regularly reconciled his trust account to be an aggravating factor). So, too, does the fact that no clients were harmed. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 202 (Iowa 2013); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 422 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012).

Ultimately, "[w]hen dealing with client trust account violations, our sanctions have ranged from a public reprimand when the violation was relatively minor and isolated to license suspension when the violation involved poor office management and neglect . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588 (Iowa 2011) (citations omitted). In one particular case, we concluded an attorney who violated trust account rules deserved only a public reprimand because his "honesty, his forthright responses, and his move to correct his operation all weigh[ed] in his favor." *Herrera*, 560 N.W.2d at 595. In *Herrera*, the attorney entrusted his accounting to a staff member who was ill equipped to handle it and who may have mismanaged the affairs because she resented Herrera. *Id.* Due to those unique circumstances, we decided a suspension was too harsh. *See id.* In other cases involving trust account violations, we have imposed only a public reprimand when the violations were isolated incidents. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 551 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel*, 779 N.W.2d 782, 789–90 (Iowa 2010) (finding no violation of several other rules and reprimanding the lawyer for the one remaining trust account violation); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 60 (Iowa 1998) (reprimanding the lawyer even though his "lackadaisical bookkeeping practices served only to compound his problems").

However, Eslick's trust account was, in her words, "out of whack" for months. Her trust account deficiencies were not an isolated incident, and therefore, her conduct is more in line with cases in which we have imposed a suspension. *See, e.g., Morris*, 847 N.W.2d at 436–37 (suspending the lawyer for six months because his "record-keeping and management deficits were severe and . . . persisted over a long period of

time"); *Kersenbrock*, 821 N.W.2d at 422 (suspending the lawyer for thirty days because of the "cumulative impact of all violations"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442–43 (Iowa 2012) (suspending the lawyer for thirty days because his "trust account problems were not isolated," created "[a] pattern of misconduct," and caused "extensive problems with four clients").

We conclude a suspension of thirty days is appropriate here. Although Eslick did not intend to defraud her clients, her failure to make trust account deposits or account for withdrawals, and her wholesale neglect of the obligation to maintain records, created a pattern of rule violations, much like the attorney in *Boles* whose "trust account problems were not isolated." *Boles*, 808 N.W.2d at 442. Further, her previous public reprimand makes a suspension appropriate in this case. In *Boles*, we also considered "the need to motivate attorneys to maintain proper trust account and billing practices" as a reason to impose a suspension. *Id.* at 443. We do so again here.

## IV. Conclusion.

We suspend Eslick's license to practice law with no possibility of reinstatement for thirty days from the date this opinion is filed. The suspension applies to "all facets of the ordinary law practice." Iowa Ct. R. 35.13(3). Unless the Board files an objection, Eslick will be automatically reinstated after the thirty-day-suspension period on condition that all costs have been paid. *See id.* r. 35.13(2). Eslick must also notify all clients of the suspension as required by Iowa Court Rule 35.23. Costs are assessed against Eslick pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**