# IN THE SUPREME COURT OF IOWA

No. 16–0111

Filed September 9, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**SHEREE L. SMITH,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney violated several rules of professional conduct and recommends a suspension. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Sheree L. Smith, Cedar Rapids, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged attorney Sheree L. Smith with violating multiple rules of professional conduct. Smith entered a stipulation conceding that her conduct violated several rules. *See* Iowa Ct. R. 36.16 (permitting stipulations in attorney disciplinary matters); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 562–63 (Iowa 2015) (establishing parameters for stipulations in disciplinary matters but cautioning that stipulations do not bind the court as to whether an ethical violation has occurred). After a hearing, the Iowa Supreme Court Grievance Commission (commission) recommended suspension of Smith's license for sixty days. We agree with the commission's recommendation and suspend Smith's license with no possibility of reinstatement for sixty days.

## I. Background Facts and Proceedings.

Smith became an Iowa lawyer in 1998. She initially worked as a clinician with a behavioral health organization and, with the organization's approval, utilized her law license to represent defendants in some court-appointed criminal matters. The organization filed for bankruptcy in 2002, and Smith then became a sole practitioner.

This disciplinary proceeding arises out of Smith's representation of a client in a family law matter and an audit of Smith's trust account. Smith stipulated to some facts, which we consider established for the purposes of this proceeding. *See Haskovec*, 869 N.W.2d at 557 ("Stipulations of facts are . . . binding on the parties."). We supplement the stipulated facts with our own de novo factual findings.

**A. Jill Hopkins Matter.** In February 2012, the district court entered a decree dissolving Jill Hopkins's marriage. Smith did not

represent Hopkins in the dissolution, but in June, Hopkins hired Smith to represent her in seeking a postdecree injunction and paid Smith a retainer of $1185. Smith deposited the retainer in her client trust account and sent Hopkins a letter establishing billing rates for her work and her assistant's work.

In July, Smith filed an application for temporary injunction. The court granted a temporary injunction and set a hearing. At that hearing, Smith requested a continuance of the matter for an indefinite period. Thereafter, Smith withdrew the retainer from her client trust account but did not send Hopkins a bill or itemization of her services.

Hopkins hired new counsel in October. Her new counsel sent Smith a letter asking her to withdraw from the case and requesting that she forward the remainder of Hopkins's retainer. Smith did not respond to the letter or forward any funds to Hopkins's new attorney.

Hopkins filed a complaint with the Board. When Smith responded to the Board's inquiry, she claimed she did not respond to Hopkins's new counsel or forward any portion of Hopkins's retainer because she had exhausted the retainer and in fact had billed additional time for which Hopkins had not paid. Smith asserted she "completed all work" Hopkins hired her to perform but Hopkins was frustrated because "the result was not what she expected." Smith did not respond to subsequent Board inquiries asking her to provide copies of records accounting for funds drawn against Hopkins's retainer.

**B. Trust Account Audits.** In 2007, a Client Security Commission auditor performed an audit of Smith's client trust account. The auditor noted a few minor deficiencies in Smith's trust account practices but acknowledged Smith had recently adjusted her document retention policies and was maintaining appropriate ledgers.

The same auditor performed another audit in 2012. He did not note any specific deficiencies in Smith's recordkeeping at that time. He also did not note, however, whether Smith had preserved her client trust account records for the length of time required by our rules. Nonetheless, the auditor concluded Smith's trust account reconciled with each bank statement he examined and with the check register.

Following the complaint lodged by Hopkins, the same auditor performed another audit in 2014. The auditor wrote to Smith and requested documents evidencing her trust account activity since January 2011, including bank statements, canceled checks, deposit slips, transaction registers, reconciliations, and monthly balance sheets that included individual subaccount balances. Smith responded that the computer on which she kept these records had irretrievably malfunctioned in February 2014, and so had her electronic backup storage. Smith further reported she had not kept a checkbook record since 2008 and did not have copies of canceled checks or deposit tickets because her bank did not return them. Smith eventually produced some documents, but the auditor considered them incomplete and insufficient to demonstrate Smith's compliance with the court rules governing client trust accounts. Smith asserted she had always kept minimal records and assumed her recordkeeping was permissible because neither of her prior audits resulted in referral to the Board or recommended changes in her trust account practices.

After Smith produced more documents in piecemeal fashion—but still not all the documents the auditor had requested—the auditor reviewed them and prepared a memorandum concluding Smith's trust account practices violated our rules in several particulars.

**C. Disciplinary Proceedings.** After Hopkins's complaint to the Board and the Client Security Commission audit, the Board opened an investigation. Eventually it filed a formal complaint with the commission, alleging Smith violated numerous provisions of the Iowa Rules of Professional Conduct and Client Trust Account Rules, including 32:1.15(a) and 45.2(3)(*a*) (not maintaining trust account records for six years following termination of the representation); 32:1.15(b) and 45.1 (commingling personal funds and trust account funds); 32:1.15(c) and 45.7(3) (not depositing advance fees in a trust account and withdrawing them only when fees are earned or expenses incurred); 32:1.5(d) and 45.2(2) (not promptly delivering funds or other property to which the client is entitled); 32:1.15(f) (violating the court rules governing trust accounts); 32:1.16(d) (not returning papers, property, and any unearned advance payments that the client is entitled to receive); and 32:8.1(b) (knowingly failing to respond to a lawful demand for information from the Board).

"[A] violation of an attorney's obligations under chapter 45 [of the Iowa Court Rules] also constitutes a violation of rule 32:1.15(f)." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015). The Board also alleged some additional trust account rule violations under chapter 45, as incorporated by rule 32:1.15(f). Those alleged violations included violations of rules 45.2(3)(*b*)(2) (not keeping sufficiently detailed records of deposits); 45.2(3)(*b*)(3) (withdrawing funds from a trust account payable to cash); 45.2(3)(*c*) (failing to ensure the lawyer's own access to and ability to produce relevant records), and 45.7(4) (failing to provide a client written notice "of the time, amount, and purpose of any withdrawal" from the client's trust account).

Smith and the Board entered a stipulation in which the parties agreed on undisputed facts, agreed Smith's conduct violated the specified rules, and jointly recommended a sanction—a suspension lasting thirty days—to the commission. Although the stipulation binds the parties as to the stipulated facts, it does not bind the court in determining whether rules were violated or in imposing the appropriate sanction. Iowa Ct. R. 36.16(2)–(3); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 549 (Iowa 2015). Nonetheless, the parties' stipulation is "helpful in narrowing the issues and highlighting the facts supporting a violation or sanction." *Haskovec*, 869 N.W.2d at 562.

The commission held a hearing to consider the stipulation, evaluate whether the record demonstrated a factual basis for it, and ask additional questions. *See* Iowa Ct. R. 36.16(1) ("The grievance commission may . . . accept the stipulation but conduct a limited hearing to elicit such additional evidence as the grievance commission may deem necessary . . . .").[1] At the hearing, Smith described her accounting

---

[1]Days before the hearing, Smith filed a motion to continue, asserting she "did not receive notice of the request for hearing by the commission" until five days before the scheduled hearing time and therefore did not receive due process or adequate time to prepare. Smith's motion stated her subjective expectation "that the stipulated agreement . . . would cancel all hearings." Smith also filed a statement with this court regarding the commission's recommendation. *See* Iowa Ct. R. 36.21(1) ("[T]he parties . . . may file written statements with the supreme court in support of or in opposition to the discipline the grievance commission recommends."). In that statement, she renews her assertion that she "was not afforded appropriate notice and time to prepare for the evidentiary hearing."

We reject Smith's claim that she did not receive adequate notice of the commission hearing. Her expectation that the stipulation would cancel all hearings was unreasonable given the language of the rule, which expressly allows the commission to accept the stipulation but still conduct a hearing. *See* Iowa Ct. R. 36.16(1). Furthermore, after reviewing the record, we conclude Smith had plenty of time to prepare. The commission entered a scheduling order on April 13, 2015—before the parties ever began negotiating a stipulation—that scheduled the hearing for October. Thus, Smith had roughly six months to prepare. She also signed a joint motion to continue that the parties filed on October 9, and the commission filed an order granting that motion on October 12. The October 12 order continues the hearing "until . . .

procedure or system as an unsophisticated one that made sense to her even if it did not make sense to anyone else. She testified the 2014 computer malfunction prevented her from refuting some of the Board's allegations, especially regarding her failure to keep adequate records, but insisted "from day one of practicing law," she had always properly deposited fees and reconciled her trust account. She further asserted some documents falling into the required six-year retention period were destroyed in a 2008 flood. However, she also acknowledged she utilized her trust account as an operating account for over a decade. *See Comm. on Prof'l Ethics & Conduct v. Kraschel*, 260 Iowa 187, 192–93, 148 N.W.2d 621, 625 (1967) (concluding an attorney commingled funds when he "maintained one account . . . for all funds for the operation of his office and funds belonging to his clients").

Smith filed a "statement of mitigating circumstances" with the commission and contended the circumstances she identified in the statement should either excuse any violations the commission found or reduce the sanction the commission would otherwise recommend. These included the 2014 computer malfunction, the 2008 flood and ensuing postal difficulties, and a complicated caseload. Additionally, Smith raised what is effectively an estoppel argument. She asserted that because the 2007 and 2012 audits did not result in disciplinary action or criticism of her accounting practices, she reasonably believed her recordkeeping complied with the rules and it should not subject her to discipline now. As Smith put it in a different filing before the commission, "I have maintained the same records for all audits and I

_____

October 26." The order about which Smith complains, which the commission filed on October 20, merely confirms that "the hearing *previously scheduled* . . . will proceed." The record simply does not support Smith's assertion that the Board or commission blindsided her by first announcing a hearing with less than a week to prepare.

have never had a corrective action. Those same records and processes cannot now be found to be non-compliant."

The commission concluded the record contained a factual basis supporting the stipulation Smith and the Board entered, with one exception: The commission did not find a convincing preponderance of evidence indicating Smith violated rule 32:1.15(c) or rule 45.7(3) by withdrawing fees before earning them. It considered as aggravating circumstances Smith's prior admonishment for failing to respond to a Board inquiry, her intransigence during the disciplinary process, and its perception—based on Smith's testimony—that she "attempts to place blame on everyone but herself" for the events generating this proceeding. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lett*, 674 N.W.2d 139, 146 (Iowa 2004) (finding it "troubling that [an attorney] . . . continually shifted the blame for her misdeeds" to other people and events, including "the terrorist attacks of September 11, 2001"); *Comm. on Prof'l Ethics & Conduct v. Steele*, 414 N.W.2d 108, 111 (Iowa 1987) (en banc) ("In each instance where production of . . . evidence could support Steele's version of the events, some factor ostensibly outside her control purportedly prevented her from doing so."). In mitigation, the commission noted Smith's violations "do not appear to be the result of any malicious conduct." However, because the violations spanned years of practice, the commission ultimately recommended that Smith be suspended from practicing law for sixty days.

## II. Scope of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 36.21(1). "The Board must prove each rule violation by a convincing preponderance of the evidence—a standard higher than in most civil cases but lower than the criminal burden of proof beyond a reasonable

doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 117 (Iowa 2015). "We respectfully consider the commission's recommendations, but they are not binding upon us." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 433 (Iowa 2014).

### III. Rule Violations.

"A party's stipulation as to a violation of the Iowa Rules of Professional Conduct does not bind us." *Haskovec*, 869 N.W.2d at 557. If the parties enter a stipulation that "concedes a rule violation, we will only find a violation if the facts are sufficient to support the stipulated violation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 857 N.W.2d 510, 514 (Iowa 2014). Accordingly, we address each stipulated violation in turn to determine "whether the Board carried its burden of proof." *Kingery*, 871 N.W.2d at 117 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 360 (Iowa 2015)).

### A. Document Retention, Preservation, Adequacy, and Access.
Several of the Board's allegations fall into this category. "Complete records of [trust] account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation." Iowa R. Prof'l Conduct 32:1.15(a); *see also* Iowa Ct. R. 45.2(3)(*a*) (listing specific kinds of records lawyers must "retain . . . for a period of six years after termination of the representation"). These must include "records of deposit . . . sufficiently detailed to identify each item." Iowa Ct. R. 45.2(3)(*b*)(2). The lawyer must ensure their own access to the records and maintain them in a format such that "printed copies can be produced." *Id.* r. 45.2(3)(*c*).

Smith did not preserve and could not produce upon request adequately detailed trust account records regarding her representation of Hopkins less than six years ago. We conclude that constitutes a

violation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 699 (Iowa 2015) (concluding an attorney committed a violation "by failing to retain for six years billing and trust account records relating to [a particular] representation"). Although we have no doubt the severe 2008 flood greatly affected Smith's practice, her representation of Hopkins did not begin until 2012. Thus, the flood could not have affected Smith's recordkeeping regarding Hopkins.

Smith failed to produce for the auditor sufficient records with adequate detail that would permit an effective trust account audit. "The bank records [s]he made available . . . evidenced numerous deposits and disbursements that could not be attributed to specific clients . . . ." *Morris*, 847 N.W.2d at 430. The auditor testified that during some audits, minor deficiencies in lawyers' recordkeeping still permit auditors to "figure it out from the other elements of the records." However, Smith's records were so minimal or even nonexistent that the auditor could not do so in this case. Consequently, when disbursing funds from the trust account, Smith's records frequently did not identify the client whose funds were disbursed. While we are sympathetic to the plight Smith faced in dealing with both natural and electronic disasters, we conclude the catastrophic events do not undermine the convincing preponderance of evidence establishing Smith violated these document preservation and retention rules. Even after the flood, Smith failed to minimally follow trust account requirements. Her numerous and persistent violations of rules contained in chapter 45 constitute violations of rule 32:1.15(f). *See Eslick*, 859 N.W.2d at 201–02.

**B. Commingling Personal Funds.** "A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount

necessary for that purpose." Iowa R. Prof'l Conduct 32:1.15(b); *see also* Iowa Ct. R. 45.1(1) (similar). We have concluded an attorney who deposited an operating loan from her father into her trust account violated rule 32:1.15(b). *Eslick*, 859 N.W.2d at 201. Similarly, we concluded an attorney violated the precursor to rule 32:1.15(b) when he "deposited the proceeds from a personal loan into the trust account, and then periodically used the account to pay a variety of business and personal obligations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall*, 728 N.W.2d 383, 385, 387 (Iowa 2007); *see also Comm. on Prof'l Ethics & Conduct v. O'Callaghan*, 436 N.W.2d 51, 52 (Iowa 1989) (noting it was "not disputed" a lawyer violated rules prohibiting commingling when he "began using his office trust account for personal deposits and expenditures").

Smith testified "[e]verything was related to [her] practice that went in" her trust account. However, Smith's testimony, the bank records, and the parties' stipulation in this case reveal Smith deposited her personal income tax refunds and proceeds from a personal insurance claim into the trust account. The evidence reveals that Smith had one personal and business bank account for several years—and it was the trust account.

Some funds are inappropriate for deposit in a trust account, even if they are related to a lawyer's practice. For example, Smith deposited earned fees from court-appointed work—which she had earned by the time the state paid them and which were therefore personal funds—into the trust account. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 126–27 (Iowa 1999) (concluding an attorney violated the precursor to rule 32:1.15(b) when he "used his trust account for the deposit of earned fees"). Smith acknowledged at the commission

hearing that depositing earned fees from court-appointed work into her trust account was "a mistake," conceded she did so "from the beginning" of her solo practice, and offered no explanation apart from "I just always did." We conclude Smith violated the rules prohibiting commingling.[2]

**C. Withdrawing Fees Before Earned.** Once a lawyer deposits client funds in the trust account, the lawyer may not withdraw such funds for the payment of an attorney fee until he or she earns it. Iowa R. Prof'l Conduct 32:1.15(c); Iowa Ct. R. 45.7(3). The commission concluded the Board had not shown by a convincing preponderance of the evidence that Smith withdrew fees from her trust account before she earned them for services rendered to Hopkins. We agree.

Smith claimed she earned the entirety of Hopkins's retainer. Because the parties entered a stipulation, the Board presented no additional evidence refuting Smith's assertion. At the commission hearing, the Board noted it was "living within the confines of the stipulation." Thus, it did not call Hopkins as a witness to testify about the various tasks Smith completed for her or examine Smith about the work she performed for Hopkins. While Smith's poor recordkeeping certainly "made it difficult . . . to trace funds to confirm" she did not withdraw fees before earning them, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 182 (Iowa 2015), we conclude the Board did not prove by a convincing preponderance of evidence that she did.

---

[2]Although commingling funds and paying personal expenses from the trust account may result in misappropriation of clients' funds, the Board did not assert Smith committed theft or misappropriation. Accordingly, we do not address whether her conduct constituted theft or misappropriation. *See* Iowa Ct. R. 36.8(1) ("If the [Board] intends to assert that a respondent misappropriated or converted client or third-party funds . . . , the [Board] must specifically allege in its complaint the misappropriation or conversion for personal use without a colorable future claim.").

**D. Prompt Delivery of Client Property.** Rule 32:1.15(d) requires lawyers to deliver promptly "any funds or other property that [a] client or third person is entitled to receive." Iowa R. Prof'l Conduct 32:1.15(d). Rule 32:1.16(d) addresses conduct after representation ends; it requires lawyers to surrender "papers and property to which the client is entitled" and refund "any advance payment of fee or expense that has not been earned or incurred." *Id.* r. 32:1.16(d).

We have concluded an attorney violated these rules when he did not return client files and records after the client (or the client's subsequent attorney) specifically requested their return. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 203–04, 209–10 (Iowa 2014); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mendez*, 855 N.W.2d 156, 162, 170 (Iowa 2014). Similarly, we have concluded an attorney committed an ethical violation by not returning any portion of a retainer after the attorney–client relationship ended even though he had done no work on the case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008).

There are some factual differences here, partially due to the stipulation. Hopkins's successor counsel asked Smith to withdraw and forward any unearned portion of the retainer—but did not request that Smith forward any files she possessed. And unlike *Ireland*, Smith performed at least some work for Hopkins by meeting with her, drafting and filing an application for an injunction, and attending the hearing. *See id.* at 502. Smith claimed she earned the entire retainer, and the Board presented no evidence refuting that. In other words, Hopkins may not have been "entitled to receive" anything from Smith because the fees charged by her may have been earned. We conclude the Board did not prove by a convincing preponderance that Smith violated these two rules

demanding prompt return of property and funds to which the client is entitled.

### E. Other Trust Account Rules.

1. *Withdrawing cash.* Trust account "[w]ithdrawals shall be made only by check payable to a named payee and not to cash." Iowa Ct. R. 45.2(3)(*b*)(3). At the commission hearing, Smith admitted she made cash withdrawals on more than one occasion. This conduct violated the rule. *See Wright*, 857 N.W.2d at 517.

2. *Notification to client when withdrawing trust account funds.* "A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense . . . ." Iowa Ct. R. 45.7(4). The available records in this case reflect that Smith rarely if ever provided her clients with the required written notice and accounting. In particular, although she sent Hopkins a letter *prospectively* disclosing the hourly rate for legal services, she never sent Hopkins an actual bill detailing the services rendered and the time spent rendering them and notifying Hopkins of the withdrawal from the trust account. We find Smith violated rule 45.7(4). *See Nelissen*, 871 N.W.2d at 699 ("Nelissen never communicated to [her client] that withdrawals were being made from the initial . . . retainer.").

### F. Failing to Respond to a Board Inquiry. A lawyer shall not "knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). The rule reflects our expectation that "[a]ttorneys must be responsive to the Board's inquiries." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 191 (Iowa 2015). Smith ignored at least three letters from the Board seeking records showing Smith's handling and use of Hopkins's retainer. We find she violated the rule. *See Nelissen*, 871

N.W.2d at 700 (concluding an attorney violated this rule when "the Board sent a series of letters . . . , as to which it received no response"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 665 (Iowa 2012) (concluding an attorney violated this rule when he disregarded a letter from the Board seeking information and "also failed to reply to a second Board letter sent three months later seeking the same . . . information").

### IV. Sanction.

When we review disciplinary matters, we "may impose a lesser or greater sanction than the discipline the grievance commission recommends." Iowa Ct. R. 36.21(1). "When determining a sanction, we consider the type of violation, a deterrent purpose for other lawyers, the need to protect the public, and the need to maintain our profession's reputation. We also consider any aggravating and mitigating circumstances." *Eslick*, 859 N.W.2d at 202 (citation omitted).

"The range of discipline imposed for substantial failures to keep and maintain records of trust account transactions ranges from a public reprimand to a suspension of several months' duration." *Morris*, 847 N.W.2d at 436 (citation omitted). "When an attorney's minor trust account violations are the result of sloppiness or lack of oversight, we have levied a public reprimand rather than a suspension." *Lubinus*, 869 N.W.2d at 550. "On the other hand, when an attorney has committed multiple or more systematic trust account violations, we have imposed suspensions . . . ." *Id.* at 551.

We issued thirty-day suspensions in several recent cases in which attorneys violated rules pertaining to lawyer trust accounts. In *Lubinus*, we suspended an attorney for thirty days because he "had a series of incidents involving misuse of his trust account" but "did not demonstrate

a total, long-term disregard for the trust account rules." *Id.* at 553–54. In *Eslick,* we suspended an attorney for thirty days when "[h]er trust account deficiencies were not an isolated incident." 859 N.W.2d at 203. In *Iowa Supreme Court Attorney Disciplinary Board v. Kersenbrock,* we suspended an attorney for thirty days in part because she "had no electronic record keeping system, and she prepared only minimal manual records over a period of several years." 821 N.W.2d 415, 420, 422 (Iowa 2012). In *Iowa Supreme Court Attorney Disciplinary Board v. Boles*, we suspended an attorney for thirty days after "his flagrant, multiyear disregard for the billing and accounting requirements of our profession." 808 N.W.2d 431, 441–43 (Iowa 2012). Finally, in *Santiago,* we imposed a suspension of thirty days for numerous violations of our rules governing trust account record keeping and management that persisted even after an earlier audit revealed deficiencies. 869 N.W.2d at 183–85.

We have also issued a sixty-day suspension for violations consisting primarily of trust account deficiencies. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish,* 801 N.W.2d 580, 585–88, 590 (Iowa 2011). We selected sixty days in part due to aggravating circumstances— particularly the fact that the attorney had "six private admonitions dating back" ten years for related conduct and had failed to return funds to which a client was entitled for almost five years. *Id.* at 589.

But sixty days is not the upper limit. In 2014, we suspended an attorney for three months after he failed to maintain proper records and commingled funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 702 (Iowa 2014). We focused in particular on the attorney's "refusal to correct his trust account practices for years [even] after he was informed of his deficient recordkeeping." *Id.* Furthermore, we considered as an aggravating factor the attorney's effort "to delay and

deflect the investigation of his trust account practices virtually up until the . . . disciplinary hearing." *Id.*

We conclude "the recurring pattern of conduct in this case warrants a . . . suspension." *Parrish*, 801 N.W.2d at 590. Smith's "record-keeping . . . deficits were severe and they persisted over a long period of time." *Morris*, 847 N.W.2d at 436. Indeed, her wholesale violations of rules pertaining to the proper use and maintenance of trust accounts persisted for years, like the attorneys' violations in *Kersenbrock* and *Boles. See Kersenbrock*, 821 N.W.2d at 420; *Boles*, 808 N.W.2d at 441. However, before determining the length of suspension, we first address aggravating and mitigating circumstances. *Morris*, 847 N.W.2d at 435–36.

The Board has privately admonished Smith on three prior occasions. In 2011, she received an admonishment after neglecting two postconviction-relief cases. In 2012, she received an admonishment after failing to cooperate with a Board investigation, in violation of rule 32:8.1(b). Finally, in 2013, she received an admonishment after ignoring a client's inquiries about his case for seven months. "While '[p]rivate reprimands are not discipline,' they provide notice of deficiencies [regarding] particular ethical requirements . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015) (first alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012)). This is especially so when the conduct for which the attorney was admonished or reprimanded resembles the conduct currently at issue. *See Van Ginkel*, 809 N.W.2d at 110 ("[T]wo prior admonitions for conduct similar to that in this case [i]s an aggravating factor on the question of appropriate sanction."). Although the Board did not allege Smith neglected the matters at issue in

this case, we consider all three prior admonishments to be aggravating factors. Her inaction both when faced with a request from Hopkins's new counsel and when faced with a request from the Board closely matches the type of unresponsive conduct she should have known by then to avoid.

Another aggravating circumstance is the fact that Smith's "persistent failure to keep appropriate records" effectively "prevent[ed] . . . review of [her] accounting practices." *Kersenbrock*, 821 N.W.2d at 422. Furthermore, Smith has been practicing for over fifteen years; her experience is another aggravating factor. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 730 (Iowa 1999) ("Sixteen years in the practice . . . tell us that Wagner should have known better."); *cf. In re De Caro*, 220 Iowa 176, 185, 262 N.W. 132, 137 (1935) (noting "[w]hat we might say or do with an attorney of larger experience, mature years, is not necessarily what would be just" for a less experienced attorney).

We reject Smith's assertion that because prior audits occurred without a disciplinary referral, her trust account practices were presumptively permissible. Lawyers always bear responsibility for knowing and following the applicable rules. "[I]gnorance of [one's] ethical obligation is no defense." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 370 (Iowa 2005). At the commission hearing, one member of the panel asked a specific question about this principle, and Smith's answer is revealing:

> Q. As lawyers, we don't do anything without consulting the rules. If you're going to court, you know, the rules of court or the rules of civil procedure, or with any criminal proceeding, you had to know those rules to practice. How is it you weren't aware of the rules regarding your records? A. Well, I'm going to acknowledge that I'm not—I

was not aware of—you know, I should have been, but was not.

We acknowledge one mitigating factor: Smith's work on behalf of clients with modest means. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012) (considering as a mitigating factor the fact that an attorney "allows persons with modest means to obtain representation" and "provides her clients with access to the courts for an affordable fee").

The commission recommended a sixty-day suspension. We agree with that recommendation. Smith is more experienced than the attorney in *Eslick*, and while "Eslick's trust account was . . . 'out of whack' for months," Smith's was noncompliant for years. 859 N.W.2d at 199, 203. The aggravating factor of additional experience and a comparably lengthier noncompliance period here lead us toward a longer suspension than the one we imposed in *Eslick*. *See id.* at 203–04 (imposing a thirty-day suspension). Smith demonstrated "a total, long-term disregard for the trust account rules." *Lubinus*, 869 N.W.2d at 553. We also conclude a suspension of sixty days—rather than a suspension of thirty days like the one imposed in *Santiago*, 869 N.W.2d at 185—is appropriate in this case because Smith has a disciplinary history including three prior admonitions.

Although we reject Smith's argument that her prior uneventful audits estop the Board from disciplining her now, we contrast these facts with *Ricklefs*, where the attorney refused "to correct his trust account practices for years *after* he was informed of his deficient recordkeeping." 844 N.W.2d at 702 (emphasis added); *see also Morris*, 847 N.W.2d at 436 ("Morris's record-keeping and management deficits were severe and they persisted over a long period of time even after the Client Security

Commission intervened with an audit and provided information that should have facilitated compliance . . . .").  In *Morris* and *Ricklefs*, the attorneys' failures to correct their trust account practices after knowing they were deficient justified longer suspensions.  *See Morris*, 847 N.W.2d at 436; *Ricklefs*, 844 N.W.2d at 702.  Smith had no similar express "informational roadmap," *Morris*, 847 N.W.2d at 435, from the Client Security Commission.  While that does not prevent a suspension because Smith remained responsible for knowing and following the applicable rules, it also does not constitute an aggravating factor justifying more severe discipline.  Accordingly, we suspend Smith's license for sixty days.

## V. Conclusion.

We suspend Smith's license to practice law in this state with no possibility of reinstatement for sixty days from the date this opinion is filed.  The suspension applies to "all facets of ordinary law practice." Iowa Ct. R. 34.23(3).  Unless the Board files an objection, Smith will be automatically reinstated after the suspension period on the condition that she has paid all costs.  *Id.* r. 34.23(2).  We tax the costs of this action to Smith.  *Id.* r. 36.24(1).

**LICENSE SUSPENDED.**